## BROWN *et als. v.* COVILLAUD *et als.*

Though time is not of the essence of a contract for the sale of real estate, unless made so by the express agreement of the parties, yet, in every case it will devolve upon the party seeking relief in a Court of Equity, to account for his delay.

And, where a party seeks to enforce a contract to convey land to him, if there are circumstances showing *culpable* negligence on his part, or if the length of time which has been permitted to intervene, together with other circumstances, raise a presumption of an abandonment of the contract, or if the property has greatly enhanced in value, and he has apparently laid by for the purpose of taking advantage of this circumstance, he will not be entitled to a decision in his favor.

In applications of this kind, the party is not entitled to relief as a matter of course, but subjects himself to the equitable consideration of the Chancellor, and must show a case free from doubt or suspicion.

Where the plaintiffs gave their note to the defendants, payable in one year and only bearing interest at ten per cent. per annum, at a time when the current rate of interest was ten per cent. per month, in consideration of which he received a covenant from the payees to convey them certain land, on the payment of the note at maturity, the low rate of interest raises the presumption that the parties intended that the note should be paid at maturity.

And where it appeared that the defendants were desirous to raise money to make certain improvements, for which reason they were anxious to dispose of some of their land, and that the plaintiffs never offered to pay their note so given, until three years after its maturity, during which time the property of one of the defendants had been sold under execution, and the other defendants had been obliged to raise money at a high rate of interest, to meet their obligations respecting this and other property, and had paid all the taxes on the land; while the plaintiffs refused to have the property assessed to them or to pay taxes thereon: that they had been ever since the making of the contract in receipt of the rents and profits of the land, which had greatly inhanced in value since the maturity of their note; and further, that since the maturity of their note they, with others, had made a written request to the defendants to be allowed to purchase the land occupied by them and the others; all these facts go to show conclusively that the plaintiffs never intended to consummate the purchase unless they found it to their interest to do so.

This conclusion is strengthened when the complaint sets up as a reason for the non-payment of the note that the defendants hitherto had been unable to make a "good and sufficient deed," as they had covenanted to do, for the reason that the title to the land in the defendants had only recently been confirmed by the U. S. Land Commission.

Moreover, the words "good and sufficient deed" refer only to the form of conveyance and not to the interest intended to be conveyed, therein differing from words of covenant and warranty.

And further, though it might be a defence to an action brought by the vendor to enforce such a contract, that he had no title, the rule cannot be invoked in an action brought by the vendee, who has broken his contract, against a vendor who only agreed to convey the interest he had in the land.

The decision of the U. S. Board of Land Commissioners confirming the title of defendants to the land, only amounts to an acknowledgment on the part of the Government that it has no claim thereto, and in no way affects the title as between the parties.

The defendants were not bound to tender a deed and demand the purchase money, in order to avoid the contract. In this State there is no rule on the subject, but in England it is the duty of the vendee to tender a deed.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

The plaintiffs filed their bill, May 11th, 1855, to compel a specific performance by defendants of a bond in the penal sum of eight hundred

dollars, given by defendants to plaintiffs, December 28th, 1850, conditioned as follows :

"The conditions of the above obligation are such, that whereas, the above bounden (defendants) have this day bargained and sold unto the said (plaintiffs) a certain section of land," in Yuba County, giving the description thereof, "for the consideration of $2,179—$150 duly paid, the balance to be paid twelve months after date hereof, for which the said (plaintiffs) have this day executed and delivered their certain promissory note payable to said (defendants); now if the said (defendants) shall, upon the payment of said note, at the maturity thereof, by the said (plaintiffs) or their legal representatives, execute and deliver unto the said (plaintiffs) or their legal representatives, a good and sufficient deed for the said section of land, then the above obligation to be null and void, but otherwise to remain in full force and virtue."

The complaint further sets forth, that in the month of October, 1850, they were put into possession of a portion of the land by the defendants, and have ever since retained possession thereof with the full knowledge and assent of defendants.

The complaint further sets forth that between the execution and the maturity of the note given by plaintiffs and referred to in the above bond, the U. S. Board of Land Commissioners was established; that the defendants claiming the land under a Mexican title, filed their claim before said Board, April 1st, 1852, by whom the title of defendants was confirmed, March 27th, 1855; that the plaintiffs made a tender of the amount due on their note, with legal interest, to defendants, and demanded a deed for the land, April 23d, 1855, which defendants refused. The complaint avers that the plaintiffs did not sooner make a tender of the purchase money and demand for the deed, because the defendants could not make them a "good and sufficient deed" to the land, until the confirmation of their title by the Board of Land Commissioners. The complaint also avers that nearly three-fourths of the land described in the bond, is occupied by third parties as settlers, without the consent of the plaintiffs; and also avers that plaintiffs have made valuable and lasting improvements on the portion of which they have possession, and proffers the amount of their note and interest.

The defendants demurred to the bill. The demurrer being overruled by the Court below, they answered, denying the equities of the bill, and averring that the object of making the contract sued on, was to raise ready money; that time was of the essence of the contract, and that the price fixed was below the actual value of the land, and that it was clearly and distinctly understood that its conveyance under the contract was to depend upon the payment of plaintiffs' note at maturity; that the plaintiffs had refused to pay the note at maturity, and had given defendants to understand that they abandoned the contract, and questioned the right of defendants to sell the land; that at the time of the execution of the note, and ever since, the rate of interest on money

ranged from five to three per cent. per month, payable monthly, while the note of the plaintiffs bore only ten per cent. per annum; that at the maturity of the note the defendants were in need of money and had to borrow at the current high rates of interest, and one of the defendants had his property sold under execution from want of means to meet his liabilities; defendants deny that since the maturity of plaintiffs' note the latter have occupied any portion of the land with the consent of defendants; they aver that the plaintiffs refused to have the land assessed to them, although enquiry was made of them in respect thereto by the proper county authorities, and that said land has always been assessed to defendants, and the taxes thereon paid by them; that the plaintiffs have been in possession of a portion of said land and have gathered crops therefrom, amounting in aggregate value, to $15,000, while the improvements put by plaintiff on the land are not worth $1,000; that the value of the land has increased greatly since the confirmation by the Land Commission, and is worth, without improvements, about $20,000; defendants also set forth in their answer a written request, dated April 18th, 1855, signed by the plaintiffs and other persons on different portions of the same grant, that they be allowed the first privilege of purchasing the land severally occupied by them.

The material averments of the answers filed, are fully sustained by the testimony taken in the case before a referee, except the allegations as to the understanding between the parties on the execution of the contract, and as to the notice by plaintiffs to defendants that they abandoned the contract and would not pay the note.

The Court below entered a decree in favor of plaintiffs.

Defendants appealed.

*Stephen J. Field* for Appellants.

Time is of the essence of the contract contained in the bond. 1. Evident from the terms of the instrument itself. 2. Rendered so from the avowed purposes of the sale. Edgerton *v.* Pickham, 11 Paige, 353–4; Taylor *v.* Langworthy, 14 Peters, 175; Newman *v.* Rogers, 4 Bro. Ch. C., 391; Popham *v.* Eyre, Lofft., 786; Leading Cases in Equity, vol. 2, part 2, page 20; 1 Sugden, 292.

There is no valid excuse for the laches of the plaintiffs. 1. The words "good and sufficient deed," in the bond, refer only to the form of the instrument; they have nothing whatever to do with the title of the parties. They mean that a deed must be executed sufficient in law to convey whatever interest the parties possessed. Gasly *v.* Price, 16 Johnson, 269; Turney *v.* Ashley, 15 Pickering, 552; Aiken *v.* Sandford, 5 Mass., 499; Parker *v.* Parmelee, 20 Johnson, 130; Van Eps *v.* Schenectady, 12 Johnson, 436.

That the Act of Congress required the claim of the defendants to be presented to the Board of Land Commissioners, is no evidence that their title was in any respect imperfect or defective. All titles, perfect and imperfect, legal and equitable, have to undergo examination before

the Board. The proceeding before the Board was one to enable the Government to separate private lands from the public domain. See Act of Congress establishing Board, § 8. See also the Fremont case.

The fact of confirmation of the claim of defendants, has not in any respect changed the condition of their title.

The plaintiffs knew when they purchased that the land was claimed under a Mexican grant.

The plaintiffs voluntarily abandoned their contract years ago. 8 Paige, 472; 2 California Rep., page 173; Willard Eq. Jurisprudence, p. 292.

But if a performance could be decreed under the circumstances of this case, it should only be done upon condition that compensation for the delay of the plaintiffs be fully and beneficially given. 2 Story's Equity, § 776.

*Henry P. Haun* for Respondents.

1. The bond calls for "a good and sufficient deed."

A covenant to execute and deliver a good and sufficient deed of a piece of land, does not mean merely a conveyance good in point of form, but it means an operative conveyance—one that carries with it a good and sufficient title to the lands to be conveyed. Clute *v.* Robinson, 2 Johns. Rep., 611; Holerman *v.* Coleman, 1 A. K. Marsh., 298; Edwards *v.* Handley, Harden Rep., 608; Young *v.* Leillard, 1 A. K. Marsh., 358, top page.

Equity never compels the vendee to accept a doubtful title. Willard's Equi. Juris., 295; Hepburn *v.* Auld, 5 Cr., 263; Holmes *v.* Holmes, 12 Barb., 137.

When the party contracting to convey, has at the time when the conveyance is to be made, either no title or a title which is defective, any condition precedent, such as tendering or paying, or securing the purchase money, need not be fulfilled by the other party to the contract. Ibid.

The bill and answer show, not only that there is doubt about the title of defendants to the land in suit, but that there is now a suit pending between the United States as claimants, adversely, on the one part, and the defendants claiming it upon the other; they also show that this claim, made by the United States, has been made to the land since the plaintiffs purchased it, and before the note the plaintiffs gave for the last payment of the purchase money became due.

It is an established principle that suit commenced or proceeding instituted, setting up an adverse title, throws a cloud over the title sufficient to justify a purchaser to lie by and await the decision of the tribunal to which it has been referred. Hunter *v.* O'Neil, 12 Ala., 37; see Taylor *v.* Longworth, 14 Pet., 172.

Upon an obligation to make an indefeasible title, the Court will not compel the vendee to accept a title which is doubtful. Kelly Heirs *v.* Bradford, 3 Bibb., 317.

Courts of Chancery will compel the specific performance of contracts

for the sale of lands after the time specified by the parties shall have elapsed. Meaux v. Helms' Heirs, printed decisions, Ky., 297 ; Tyre v. Williams, 3 Bibb, 365.

A long delay of payment of the consideration of a contract to convey land, will not *per se* furnish grounds for refusing a specific execution, if there are palliating circumstances, and rigorous compliance was not probably expected.   Leogan v. McChord's Heirs, 2 A. K. Marsh., 226.

1f a bill be brought for a specific performance by a party who has been in default, the Court ought to consider all the circumstances and pronounce such decree as is best adapted to the circumstances.   Newland on Contracts, pp. 230 to 241 ; 1 Foubl. Eq., 227 ; Bellinger v. Keith, 6 Barb. Sup. Court Rep., 273 ; Edgerton v. Peckham, 11 Paige, 352 ; Waters v. Travis, 9 Johns., 463.

No lapse of time will bar a purchaser of a right to a specific execution of a contract to convey where he or some one under him has had continued possession from the time of the purchase.   Calmes v. Buck, 4 Bibb, 450.

The argument that the length of time which elapsed without payment of the purchase money demands the inference that the contract had been abandoned, is of no force.   It was within power of the vendor to render the time as short as he chose, by a prompt enforcement of his lien.   Cal. Rep., May Term, 1854 ; Golden v. Buckelew, 4 Cal., 111.

Though time is not of the essence of a contract where there has been great and improper delay on one side, the other party has a right to fix a reasonable time within which the contract is to be completed ; that time will then be considered by a Court of Equity as having become of the essence of the contract.   Fletcher v. Wilson, 1 Smedes & Marsh.

Here has been a continued possession on the part of the respondents, from the period of the agreement to this time, not as a tenant liable to rent, but as holding under the agreement.

This was a constant and continued affirmance on the part of the appellant that the holding was under the agreement.   Waters v. Travis, cited above ; Calmes v. Buck, 4 Bibb, 453, cited above ; Barbour v. Whitlock, 4 Monroe, 198 ; Buck v. Holloways, 2 J. J. Marsh., 167–8 ; Somerville v. Trueman, 4 Har. & McHen., 43.

Mere increase in the value of the land sold will be no answer to a bill by the vendee for a specific performance.   Falls v. Carpenter, 1 Dev. & Bat. Ch., 237 ; White & Tudor's Law and Equity Cases, Law Lib., v. 62, p. 30 ; Low v. Treadwell, Maine Rep. ; Sugden on Vendors, 160.

·It is not pretended there has been any express or formal abandonment on the part of the plaintiffs.   The allegation is, that it is to be implied from his conduct.

To sustain this implication, the conduct of the vendor ought to be such as to justify a reasonable man in believing that he acquiesced in the decision of the vendee, to abandon the contract ; it ought to be such as might reasonably influence the conduct of the vendee, and induce

him to regulate his own affairs, on the presumption that it was no longer encumbered by his contract. Garnett v. Macon et al.. Ch. J. Marsh. Deci., vol. 2, p. 209; Flemming v. Duncan, Ky. Decis., 385; Tudor & Wh. Eq. Cases, Law Lib., v. 62, p. 31, commenting on the case of Benedict v. Lyinch, 1 Johns. Ch. R., 370; ib., p. 33.

Nor can a party to such a contract rescind it without the other's consent, unless there has been an offer of performance on his part, and a refusal to perform by the other. Shirley v. Shirley, 7 Blackf., 452; Waters v. Travis, 9 Johns., 466; Longworth v. Taylor, 1 McLean, 395; Lawrence v. Dale, 3 Johns. Ch., 42; McNeven v. Livingston, 17 Johns., 436.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice HEYDENFELDT and Mr. Justice TERRY concurred.

It is a familiar principle of equity that time is not of the essence of a contract for the sale of real estate, unless made so by some express agreement of the parties. The rule, however, is subject to some exceptions, and is thus stated by Judge Story, in the case of Taylor v. Longworth, 14 Peters', p. 172 : " There is no doubt that time may be the essence of a contract for the sale of property. It may be made so by the express stipulations of the parties, or it may arise by implication, from the very nature of the property, or the avowed objects of the seller or the purchaser. And even when time is not thus, either expressly or impliedly, of the essence of the contract, if the party seeking a specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part, or if there has, in the intermediate periods, been a material change in circumstances, affecting the rights, interests, or obligations, of the parties, in all such cases Courts of Equity will refuse to decree any specific performance, upon the plain ground that that it would be inequitable and unjust. But, except under circumstances of this sort, or of an analogous nature, time is not treated by Courts of Equity as of the essence of contracts; and relief will be given to the party who seeks it, if he has not been grossly negligent, and comes within a reasonable time, although he has not complied with the strict terms of the contract. But in all such cases the Court expects the party to make out a case free from all doubt, and to show that the relief which he asks is, under all the circumstances, equitable; and to account, in a reasonable manner, for his delay and apparent omission of duty."

From the foregoing, which is but a concise statement of the principle, it may be gathered that, while time is not of the essence of the contract, ordinarily, yet in every case it will devolve on the party seeking relief to account for his delay, and, if there are circumstances showing culpable negligence on his part, or if the length of time which has been permitted to intervene, together with other circumstances, raise the presumption of an abandonment of the contract; or if the property has greatly enhanced in value in the mean time, and the purchaser has

·laid by apparently for the purpose of taking advantage of this circumstance, he will not be entitled to a decree in his favor.

It will be borne in mind that in applications of this kind the party is not entitled to relief, as a matter of course, but that he subjects himself to the equitable consideration of the chancellor, and must show a case free from doubt or suspicion.  Hence it may often result that, although time was originally no material element of the transaction, the subsequent conduct of a party, taken in connection with his default, may make a case which would deprive him of all relief in equity. \

In examining the case under consideration, it will be necessary to look—first, at *the letter of the contract; second*, at the circumstances under which it was made, to ascertain the intentions of the parties; and, third, to the facts and circumstances which have transpired since its execution, to determine whether they take it out of the general rule first stated.

The bond under which the plaintiffs in the Court below claim their rights, binds the defendants to make a good and sufficient deed, on payment of the note at its maturity.  Now, although this language of itself would be insufficient to establish the fact that the payment of the note, at a precise point of time, was an essential element which controlled or induced the contract, still, it may be taken in consideration, with other facts and circumstances, to establish the true intention of the parties. \

It appears from the testimony that the defendants were anxious to dispose of the property in question, for the purpose of making certain contemplated improvements; that they were greatly in need of ready money, and that the sale was made to obtain it.  In addition to this, the note of the plaintiffs bore no interest other than the legal interest, which was ten per cent. per annum, while the conventional interest at that time was ten per cent. per month.  This fact alone would be sufficient of itself to raise the presumption that the parties understood that the note should be paid at maturity; for, if it had not been so understood, a different rate of interest would, in all probability, have been agreed upon, at least after the note became due.

In the next place, it appears that the plaintiffs never offered or evinced a desire to perform the contract on their part, until three years after the maturity of the note; and, in the mean time, although the sale was understood to be for cash, the property of one of the obligors was sold on execution; that the defendants were compelled to borrow money at a high rate of interest to meet their obligations, in respect to this and other property, of which it was originally a part; and that the land was assessed in the name of the defendants, they paying the taxes thereon, while the plaintiffs refused to give it in for assessment or pay the taxes; that the property has greatly improved in value since the note became due; that they have been in receipt of the rents and profits thereof ever since the time of the sale; and further, that they signed a written request or letter to the defendants to be allowed to purchase a portion of said land, on its confirmation by the United States Land

Brown *v.* Covillaud.

Commissioners.   All the evidence in the case goes to show conclusively, as we think, that the plaintiffs never intended to consummate the purchase, unless they found it to their interest to do so; and it was their intention to lie by, and, if the grant was rejected by the Land Commission, to claim it by pre-emption and settlement.

This conclusion is strengthened by the character of the defence set up by way of excuse for not sooner complying with their part of the contract, viz.: that the defendant was not in a situation to make them a " good and sufficient deed " at the date of the execution of the bond. It is shown by the testimony that the character of the defendants' title was a matter of general notoriety; besides, the Recording Act had gone into effect, and it would hardly be too much to suppose that the grant had been recorded, and that the plaintiffs knew the title they were purchasing.

But, aside from this, the words, " *good and sufficient deed,*" only refer to the form of the conveyance, and not the interest intended to be conveyed; in other words, the defendants obligated themselves to make a conveyance sufficient to pass their title, whatever it might be, to the plaintiffs.   (Gazley *v.* Price, 16 Johns., 169.)   On the other hand, if words of covenant and warranty are made use of in the instrument, they refer to the character of the estate—as was the case in Finney *v.* Ashley, 15 Pick., 546, where the vendors had bound themselves to execute a " good and sufficient warranty deed; and the Court held that the words " *good and sufficient*" relate only to the validity of the deed to pass the title which the defendants had to the plaintiff, and do not imply that their title was valid, or that it was free from encumbrances. To guard against any defect of title a covenant of warranty was provided for, which shows clearly that the agreement was so understood by the parties.   If any authority were necessary to support so plain a construction of the contract, the case of Gazley *v.* Price, above quoted, will be found full and decisive as to this point.

The judge below, in deciding this case, seems to have relied on the decision in Parker *v.* Parmalee, 20 Johns., 131, in which Chief Justice Spencer, in speaking of the decision of the chancellor, in Clute *v.* Robinson, 2 Johns., said :   " I fully concur in the proposition that when a party seeks the aid of a Court of Equity to enforce a specific execution of an agreement for the acceptance of a conveyance of a piece of land, under a covenant to execute a good and sufficient deed, and to compel the payment of the money stipulated to be paid as a consideration for the conveyance, it would be a good defence that the party had no title."

The correctness of this opinion cannot be doubted; the difficulty is in its application, and that consists in the difference of the attitude of the two parties.   A Court of Equity would not compel a party to give something for nothing.   But this rule will not apply in a case where the vendor never agreed to convey anything, except his interest in the land, and when he does not seek the interposition of a Court of Equity, but the party who has broken his covenant.

37

In addition to this, it may be added, that the establishment of a Board of Land Commissioners could in no way affect or cloud the title to the land in question. Its determination simply amounts to an acknowledgment, on the part of the United States, that the Government had no claim in the property.

It is urged, on behalf of the respondents, that the value of their improvements should be taken into consideration, as showing their good faith in the transaction. The testimony as to their value is conflicting. It is shown that they are of a temporary character, not calculated to enhance the value of the freehold; and for the years 1851, '52, '53 and '54, were given in to the assessor at $400 ; and he testifies that it was his usual custom to swear parties as to the correctness of the value so estimated on their property, although he does not remember whether he did so in this case.

In 1855, after the commencement of this suit, the property was assessed at $2,500, while the annual rents and profits have largely exceeded the value of the improvements, or the original price agreed to be paid for the property.

It is also contended that it was the duty of the defendants, if they wished to avoid the contract, to have tendered a deed, and have demanded the purchase money. The law enjoins no such duty upon them. In this State there is no settled rule on this subject, though in England it is the duty of the vendee, and not the vendor, to tender a deed.

On a full examination of all the facts, we are satisfied that the decree is erroneous and ought to be reversed. Ordered accordingly.