## MIDDLESEX COMPANY *vs.* CITY OF LOWELL.

Middlesex.   April 3, 1889. — June 20, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Nuisance — Mill-Pond — Sewer — Adverse Possession — Prescription*
*— Equity Practice — Decree.*

A city, in 1842 and 1871, built sewers so as to discharge into a mill-pond, which, however, before the public introduction of water into the city, in 1873, carried very little beyond surface water into the pond, but from that time added constantly, materially, and appreciably to a noxious deposit in the bottom of the pond, a part of which came from other sources, and to unhealthy gases arising from it.   In 1884 the owner of the pond brought a bill in equity against the city to stop such discharge and to cause the removal of the deposit.   *Held*, that the city had gained no right by prescription so to discharge the amount then discharged by it into the pond, and that such owner was entitled to a decree.   *Held, also*, that the city should have a reasonable time to enable it to comply with the decree, and should not be compelled to remove the whole of the deposit.

BILL IN EQUITY, filed April 26, 1884, to restrain the defendant from filling the plaintiff's mill-pond, and to compel it to remove

noxious material already deposited in the pond. Hearing upon the pleadings and a master's report, before *Holmes*, J., who at the request of the parties reserved the case for the consideration of the full court, in substance as follows.

The master's report contained the following facts. The plaintiff, a mill corporation, was the owner of the mill-pond in question, which was situated on the Concord River and was raised by its dam, and of the land under the pond, and from its organization in 1823 had constantly used the water power thus created for manufacturing and other purposes. In 1842 the defendant city caused to be constructed a main sewer in Andover Street, and in 1871, another in Church Street, so as to discharge into the plaintiff's mill-pond. From time to time other sewers were constructed by the defendant in adjoining streets, covering a large section of the city, which discharged into these main sewers. Before 1873 these sewers for the most part carried surface water from these streets into the pond, mingled with sand only, and very little if any house sewage went into the pond. Since the public introduction of water into the defendant city, in that year, and its general use in houses along the line of these sewers, a constant and appreciable amount of house sewage of a noxious character has passed through them into the pond.

After the filing of the bill, the defendant had completed a sewer, which intercepted the Church Street sewer, and caused it to discharge below the plaintiff's dam and pond.

The water of the plaintiff's pond was formerly used for drinking, as well as for manufacturing purposes, but for fourteen years at least had been used by the plaintiff for the latter purposes only. The bottom of the plaintiff's pond is to a large extent covered with a deposit, varying from ten to thirty inches in thickness, composed of sand and sewage matter discharged from the defendant's main sewers, and of refuse brought down the stream from other sources. The discharge from the Andover Street sewer and the Church Street sewer had contributed, and the discharge of the former now contributes constantly, materially, and appreciably to the amount of this deposit, and to the volume and unhealthy nature of gases generated by it. The odors from the pond were perceptible as early as 1872, and the trouble has gradually but very slowly grown worse every summer since that time.

If, upon these facts, the plaintiff was not entitled to relief, the bill was to be dismissed; otherwise, an injunction was to issue restraining the defendant from discharging the sewage into the pond, and an order was also to issue that such material in the pond be removed by the defendant.

*B. F. Butler & P. Webster*, for the plaintiff.

*F. T. Greenhalge*, for the defendant.

HOLMES, J.   The defendant has built sewers which discharge into the plaintiff's mill-pond, and which contribute constantly, materially, and appreciably to a deposit at the bottom of the pond, and to unhealthy gases which arise from the deposit.   It does not appear that the defendant ever took any part of the plaintiff's land or of its water rights by eminent domain, or that it acted under any statute.   It follows that the plaintiff is enti-tled to the injunction, unless the defendant has acquired a pre-scriptive right to discharge through its sewers upon the plaintiff's land substantially the amount which it now discharges there.

As to that, the causes of the nuisance in its present form, so far as the defendant is responsible for them, existed only to a very small extent, if at all, before the public introduction of water, in 1873, and the trouble has been slowly growing worse ever since that time.   It is suggested, that, when the first sewer was built, in 1841, the plaintiff might have contemplated the present result.   But at that time there was no water.   And fur-ther, prescriptive rights are measured by the extent of the actual adverse use of the servient property, not by the extent of the threats of the dominant owner.   *Kenison* v. *Arlington*, 144 Mass. 456, 457, 458.   *Horner* v. *Stillwell*, 6 Vroom, 307.   See *Goldsmid* v. *Tunbridge Wells Improvement Commissioners*, L. R. 1 Ch. 349, 352.   It was not argued that the plaintiff was estopped by the fact that it did not seek for an injunction when the sewer first was built.   *Morse* v. *Worcester*, 139 Mass. 389, 392.

The plaintiff is entitled to an injunction.   *Boston Rolling Mills* v. *Cambridge*, 117 Mass. 396.   *Haskell* v. *New Bedford*, 108 Mass. 208.   If it should be necessary to allow a reasonable delay in order to enable the defendant to comply with the order of the court, that will be considered by the single justice in framing the decree.   *Attorney General* v. *Colney Hatch Lunatic Asylum*, L. R. 4 Ch. 146.   It does not appear what percentage of the deposits

has been caused by the defendant, but it does appear that only a part of them has been so caused. The burden of removing the whole ought not to be thrown upon the defendant. See *Buddington* v. *Shearer*, 20 Pick. 477, 479; *Chipman* v. *Palmer*, 77 N. Y. 51; *Little Schuylkill Navigation Co.* v. *Richards*, 57 Penn. St. 142; *Wood* v. *Sutcliffe*, 16 Jur. 75.

*Injunction to issue.*