[No. 15966.   Department One.—January 31, 1896.]

J. B. STANFORD ET AL., RESPONDENTS, v. CITY AND COUNTY OF SAN FRANCISCO, APPELLANT.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—FLOODING PRIVATE PROPERTY—ACCUMULATION OF SURFACE WATER—LIABILITY OF CITY. Municipal corporations are liable in damages for their action in constructing streets, sewers, and drains in such a manner that the surface water of a large territory, which did not naturally flow in that direction, is gathered into a body and precipitated upon private premises to the injury of the owner.

ID.—CONSTRUCTION OF SEWER—DUTY OF CITY—CESSPOOLS—IMPROVEMENT OF STREET.—The rule that there is no duty imposed by law upon a city to construct cesspools in connection with a sewer is subject to the proviso that the improvement of the street by the city does not create the necessity for cesspools; and where, by the paving of the street in connection with the absence of cesspools, surface water, which before sank in the sand, is made to accumulate above the grade of the street to the injury of private owners, instead of being discharged into the sewer, the city is liable for the resulting damage.

ID.—NEGLIGENCE OF CITY—FINDINGS—PROBATIVE FACTS—ULTIMATE FACT. Where the court has found all the probative facts from which negligence of the city is shown, such negligence need not be expressly found as an ultimate fact.

ID.—ACTION FOR DAMAGES—EVIDENCE—PUTTING IN CESSPOOLS SUBSEQUENT TO OVERFLOW—HARMLESS RULING.—In an action for damages against the city for causing the overflow of plaintiff's premises, the admission of evidence that, subsequent to the overflow complained of, the city put in cesspools, for the purpose of showing that the flooding of plaintiff's premises could have been avoided by that means, if erroneous is harmless, it appearing that without such evidence the result must have been the same.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   J. B. C. HEBBARD, Judge.

The facts are stated in the opinion.

*Harry T. Creswell*, City and County Attorney, for Appellant.

There is no duty imposed by law upon a municipal corporation to carry away surface water from its streets. (*Corcoran* v. *Benicia*, 96 Cal. 1; 31 Am. St. Rep. 171, and cases cited; *Los Angeles Cemetery Assn.* v. *Los Angeles*, 103 Cal. 461; 2 Dillon on Municipal Corporations, 4th

ed., secs. 1039, 1041; *Atchison* v. *Challis*, 9 Kan. 610; *Gould* v. *Booth*, 66 N. Y. 65; *Clark* v. *Wilmington*, 5 Harr. (Del.) 243; *Imler* v. *Springfield*, 55 Mo. 119; 17 Am. Rep. 645; *Lynch* v. *Mayor*, 76 N. Y. 60; 32 Am. Rep. 271; *Wilson* v. *Mayor etc. of New York*, 1 Denio, 595; 43 Am. Dec. 719; *Mills* v. *Brooklyn*, 32 N. Y. 489.) And in undertaking simply to drain the sewage from the houses of the abutting property, the city was not liable for not having drained the surface water also, when, in so doing, the street was left in no worse condition than if no attempt to drain had been made. (2 Dillon on Municipal Corporations, 4th ed., sec. 1046; *Mills* v. *Brooklyn, supra*.) A city may exercise its discretion, subject to no review or question in any court, whether at any particular place it will build a sewer. (*Lehn* v. *San Francisco*, 66 Cal. 76; *Lynch* v. *Mayor, supra; Flagg* v. *Worcester*, 13 Gray, 601; *Johnston* v. *District of Columbia*, 118 U. S. 21; *Fair* v. *Philadelphia*, 88 Pa. St. 311; 32 Am. Rep. 455; *Waters* v. *Bay View*, 61 Wis. 642, 644; *Atchison* v. *Challis, supra; Allen* v. *Chippewa Falls*, 52 Wis. 430; 38 Am. Rep. 748.) A city is only liable for ministerial acts of the board of supervisors. (*Anderson* v. *East*, 117 Ind. 126; 10 Am. St. Rep. 35; *Rice* v. *Evansville*, 108 Ind. 7; 58 Am. Rep. 22; *Wright* v. *Augusta*, 78 Ga. 241; 6 Am. St. Rep. 256.)

*Gordon & Young*, for Respondents.

A municipal corporation is liable for damages occasioned by the overflow of surface water when, having provided waterways, it fails to provide such as are sufficient to carry off the water that might reasonably be expected to accumulate. (*Barnes* v. *District of Columbia*, 91 U. S. 540; *Leavenworth* v. *Casey*, McMahon, 124; *Rochester etc. Co.* v. *Rochester*, 3 N. Y. 463; 53 Am. Dec. 316; 2 Dillon on Municipal Corporations, 3d. ed., secs. 1048–51; Wharton on Negligence, secs. 264, 956; *Denver* v. *Dunsmore*, 2 West Coast Rep. 841; *Indianapolis* v. *Huffer*, 30 Ind. 235; *Bloom* v. *San Francisco*, 64 Cal. 503; *Lehn* v. *San Francisco*, 66 Cal. 76; *Conniff* v. *San Francisco*, 67 Cal. 45; *Spangler* v. *San Francisco*, 84 Cal.

12; 18 Am. St. Rep. 158; *Reardon* v. *San Francisco*, 66 Cal. 492; 56 Am. Rep. 109; *McCarthy* v. *Syracuse*, 46 N. Y. 194; *New York* v. *Furze*, 3 Hill, 612; *Hutson* v. *New York*, 9 N. Y. 163; 59 Am. Dec. 526; *Rochester etc. Co.* v. *Rochester, supra; Conrad* v. *Trustees*, 16 N. Y. 158; *Barton* v. *Syracuse*, 36 N. Y. 54.)

HAYNES, C.—Plaintiffs were the occupants of the basement of a building No. 720 Mission street, which extended back to the southerly side of Jessie street, and had stored therein a large quantity of wall paper and other goods used in their business.

In the early part of 1888 the defendant caused a sewer to be laid in Jessie street from the center of fourth street easterly to its termination in a *cul de sac* at the westerly line of the Grand Opera House, which extends entirely across Jessie street, just east of the premises occupied by plaintiffs. The westerly end of said sewer connected with a sewer in Fourth street. The sewer in Jessie street had two manholes with covers, but no cesspools were provided to carry the surface water from the street into the sewer, and none were provided for in the contract under which it was constructed.

Shortly after the construction of the sewer the defendant also caused the same portion of Jessie street to be paved with basalt blocks, and granite curbs to be laid and the sidewalks reconstructed. After the street was paved the southerly side was slightly lower than the northerly side, and the easterly end was about twenty-six inches lower than it was at Fourth street, the distance being about six hundred feet. Prior to paving the surface of the street was covered with loose planks, and the street being sandy the surface water was absorbed.

On March 13, 1889, large quantities of water accumulated and collected at said easterly termination of Jessie street by reason of rains, and the water broke over the curbing and ran into the basement occupied by plaintiffs, and injured their merchandise to the amount of

seven hundred and fifty-nine dollars and eighty-one cents, and this suit is prosecuted to recover damages in said sum.

The cause was tried by the court without a jury, and findings were filed and judgment entered for the plaintiffs, and the defendant appeals from the judgment and from an order denying a new trial. There is no controversy as to the injuries sustained by the plaintiff, nor as to the general facts above stated.

Appellant, while contending that the findings do not support the judgment, also contends that the latter part of the eighth finding is not justified by the evidence, and quotes that part as follows: "That said plaintiffs were damaged in said sum of seven hundred and fifty-nine dollars and eighty-one cents by reason of the failure of the said defendant to provide cesspools or any means to carry off any accumulation or collection of water from the aforesaid portion of Jessie street."

Its contention as to this finding is that it was the paving of the street, and not the construction of the sewer, that caused the accumulation of the water and the consequent damage. But the findings state all the facts connected with the improvement of the street and the accumulation of the water thereon, as well as the fact that prior to these improvements the sand absorbed the surface water; and does not find that the construction of the sewer caused the water to accumulate upon the street, but attributes the injury to defendant's failure " to provide cesspools or *any means* to carry off" the water. The existence of the sewer doubtless suggested that cesspools connected therewith would have been a convenient and practical mode of carrying away the water, thus preventing its accumulation which was the necessary result of the paving.

The question is, therefore, whether there was any legal obligation resting upon the city to provide means for conducting away surface water, the accumulation of which was the necessary consequence of paving the street.

Neither of the contracts for the improvement of the street provided for the construction of cesspools, and the omission to construct them was not the result of the negligent performance of the work under the contracts, and therefore the case does not come within the class of cases where injury results from the neglect of the city to see that the contractor properly executes the plan adopted, the execution of the work according to the plan being a mere ministerial duty and not the exercise of legislative power.

Nor is this case within that numerous class of cases where it is held with almost entire unanimity " that a municipality is not bound to protect from surface water those who may be so unfortunate as to own property *below* the level of the street." (Dillon on Municipal Corporations, sec. 1042.) Here the grade of Jessie street was not changed, nor is there any claim that the premises occupied by plaintiffs were below grade. Here a street, which before it was paved absorbed the water falling upon it, by the paving is made to retain and collect the same upon its surface, no means being provided for removing or conducting it away. The portion of the street so paved crossed no street or alley by which it could be diverted, and as the easterly end was more than two feet lower than its westerly end, and was absolutely closed at the lower end by a building which crossed it, it was inevitable that the water falling on that portion of the street below Fourth street would be collected and retained until it could escape by flowing over the curb and sidewalk and into the basement occupied by the plaintiffs. It was not simply the water falling upon the street opposite plaintiff's premises, but it was the collection of all the water falling upon the street below Fourth street, the work being so done that the accumulated water was raised above the grade of the street, and above the grade of plaintiff's premises which were up to the grade of the street.

Counsel for appellant cites section 1039 of Dillon's Municipal Corporations in support of the proposition

that "the law regards surface water as a common enemy, which every proprietor may fight or get rid of as best he may."

That section and the two following are devoted to the subject of "liability in respect of surface water," and the last of these (section 1041) is devoted to the question of the "omission to provide drains." The learned author says: "It is clear that there is no liability on the part of a municipal corporation for *not* exercising the discretionary or legislative powers it may possess to improve streets, and as part of such improvement, to construct gutters or provide other means for draining for surface waters, so as to prevent them from flowing upon the adjoining lots." But in note 2 to said section it is said: "If the necessity for the drainage is caused by the city, the doctrine of the text (section 1041) that it is not bound to supply the drainage does not apply." Even as applied to property below the level of the street the same learned author says: "It is possible there may be no middle ground; but we are unable to assent to the doctrine that by reason of their control over streets, and the power to grade and improve them, the corporate authorities have the absolute and unconditional legal right intentionally to divert the water therefrom, as a mode of protecting the streets, and to discharge it by artificial means, in increased quantities and with collective force and destructiveness, upon the property, perhaps improved and occupied, of the adjoining owner." (Dillon on Municipal Corporations, sec. 1042.) In a note to this section, in the fourth edition, he says: "The many cases since decided, cited in the notes, have found and defined the ʼmiddle ground,ʼ therein referred to, and adjudged the law to be as stated in the text."

In *Ashley* v. *Port Huron*, 35 Mich. 296, 35 Am. Rep. 552, it was held that where a city constructed a sewer in such manner as to throw a large quantity of water upon plaintiff's premises which otherwise would not have flowed there, it was liable for the damage caused thereby. In the opinion in that case, after referring to

a great many authorities, Chief Justice Cooley said: "It is very manifest, from this reference to authorities, that they recognize in municipal corporations no exemption from responsibility where the injury an individual has received is a direct injury accomplished by a corporate act which is in the nature of a trespass upon him. The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If a corporation send people with picks and spades to cut a street through it without first acquiring the right of way, it is liable for a tort; but it is no more liable under such circumstances than it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding must be a necessary result. The one is no more unjustifiable than the other. Each is a trespass, and in each instance the city exceeds its lawful jurisdiction. A municipal charter never gives and never could give authority to appropriate the freehold of a citizen without compensation, whether it be done through an actual taking of its streets or buildings, or by flooding it so as to interfere with the owner's possession. His property right is as much appropriated in the one case as in the other."

In *Seifert* v. *Brooklyn,* 101 N. Y. 136, 142, 54 Am. Rep. 664, it was said: "Municipal corporations have quite invariably been held liable for damages occasioned by acts resulting in the creation of public or private nuisances, or for an unlawful entry upon the premises of another whereby injury to his property has been occasioned. (*Baltimore etc. R. R. Co.* v. *Fifth Baptist Church,* 108 U. S. 317.) This principle has been uniformly applied to the act of such corporation in constructing streets, sewers, drains and gutters, whereby the surface water of a large territory, *which did not naturally flow in that direction,* was gathered into a body, and thus precipitated upon the premises of an individual, occasioning damage thereto." (See also note to *Chalkley* v. *Richmond,* 29 Am. St. Rep. 742, under the head " Sur-

face Water," where a large number of cases from many different states are cited.)

In *Los Angeles Cemetery Assn.* v. *Los Angeles*, 103 Cal. 461, 470, the same principle is asserted; and in the later case of *De Baker* v. *Southern Cal. Ry. Co.*, 106 Cal. 257, 282, 46 Am. St. Rep. 237, it was said: "But if the work was inherently and according to its plan and location a dangerous obstruction to the river, such as ordinary prudence should have guarded against, not only the author of the plan to obstruct the stream (the city of Los Angeles), but the person placing the obstruction, was severally liable for the entire damage.". (See, also, *Reardon* v. *San Francisco*, 66 Cal. 492, 56 Am. Rep. 109, where the city was held liable for an injury to plaintiff's lot caused by work done upon the street, which was the immediate, direct and necessary effect of the work done.)

*Corcoran* v. *Benicia*, 96 Cal. 1, 31 Am. St. Rep. 171, and the other cases cited by appellant on page 5 of his brief, do not conflict with the authorities which we have cited above.   *Corcoran* v. *Benicia, supra*, is to the effect that a municipal corporation is not liable for damages caused by the prevention of the flow of surface water *from* the lot of a private owner, by raising the street to the grade, where such water does not run in a natural channel across the lot.   The distinction between that case and this is obvious, and the other cases cited by appellant rest upon similar facts.

It is also true, as stated by appellant, that "there is no duty imposed by law upon the city to construct cesspools in connection with the sewer," if we add the proviso that the improvement of the street by the city does not create the necessity for cesspools.

It is also contended that "the court failed to find any negligence on the part of the city." All the probative facts being found, negligence, if shown thereby, as is the case here, need not be expressly found as an ultimate fact.

It is further contended that "the court erred in ad-

mitting evidence that defendant, subsequent to the over-flow, put in cesspools."

If such evidence is admissible for any purpose it could only be as a demonstration that the flooding of plaintiff's premises could have been avoided by that means. But, conceding that the court erred in admitting that fact in evidence, it does not appear that the defendant was or could have been prejudiced by it, and it does appear that without that evidence the result must have been the same.

The judgment and order appealed from should be affirmed.

VANCLIEF, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HARRISON, J., VAN FLEET, J., and GAROUTTE, J.

Hearing in Bank denied.