[Civ. No. 2525.   Second Appellate District.—April 10, 1918.]

P. FARRELL, Appellant, v. CITY OF ONTARIO (a Municipal Corporation), et al., Respondents.

MUNICIPAL CORPORATIONS — IMPROVEMENT OF STREET — DRAIN FOR SUR-FACE WATERS—DAMAGE TO PRIVATE PROPERTY—LIABILITY OF CITY. A municipal corporation may be enjoined by a property owner from maintaining a paved street in a condition which will make the same a watercourse for surface waters in time of storm and rainfall, instead of a street for traffic, whereby the owner's land will be gullied and have deposited thereon large quantities of silt, sand, and various kinds of debris, even though the paving of the street was completed before the action for the injunction was commenced.

INJUNCTION—CONTINUING TRESPASS.—An injunction against a continuing trespass will not be denied merely because acts of trespass actually have been accomplished.

APPEAL from a judgment of the Superior Court of San Bernardino County. H. T. Dewhirst, Judge.

The facts are stated in the opinion of the court.

Joseph Scott, A. S. Maloney, and A. G. Ritter, for Appellant.

Archie D. Mitchell, for Respondents.

CONREY, P. J.—The plaintiff appeals from the judgment, which was entered after an order sustaining a general demurrer to the amended complaint, which complaint the plaintiff refused to amend.

As shown by the complaint, the plaintiff is the owner of real property which lies immediately south of and adjacent to the city limits of the city of Ontario. For a number of years prior to the acts complained of in the complaint there has been, and now is, in the city of Ontario a street known as San Antonio Avenue, extending south from the northerly city limits and having its southerly terminus at the junction of plaintiff's property and the southerly limits of the city. The city of Ontario, on or about August 1, 1916, passed an ordinance and awarded a contract for the paving of San Antonio Avenue south from a point about one and one-half miles north of the junction of plaintiff's property with the southerly boundary of the city. Pursuant to these proceedings the defendants caused San Antonio Avenue to be excavated below its former level and thereby brought that avenue to a lower level than the land through which the avenue runs. By so excavating the defendants increased the fall along the avenue from north to south to a considerable extent. By each and all of said acts the defendants have made of San Antonio Avenue a watercourse and a drain which will inevitably collect and carry great volumes of surface water in time of storm and rainfall and pour said water in immense quantities upon the plaintiff's property in augmented and accelerated volume, and will bring great quantities of said surface water upon plaintiff's land which would not have reached said land under natural conditions or if San Antonio Avenue had been graded, paved, and curbed in a proper manner. The defendants have made no provisions of any kind for carrying off said surface water, which will be collected by and be diverted into said avenue through the acts of the defendants, and which by reason of said acts will flow down said avenue to and upon the plaintiff's real property to the great injury and damage thereof. There are various dirt roads and streets running east and west in the city of

Ontario intersecting with San Antonio Avenue. The defendants negligently have so arranged and diverted the surface drainage of the country through which said paved street passes as to cause the intersecting streets and the lands to the east and west of said avenue to pour their surface drainage into San Antonio Avenue, and have so arranged San Antonio Avenue that it will act as a principal canal, drain, and water conduit into which said intersecting streets and a great deal of the country surrounding said avenue will drain in time of rainfall or storm, so that thereby in time of rainfall or storm the avenue will be a storm drain instead of a street for traffic. The result will be that the avenue will collect all of the waters of the portion of the city through which it passes, contrary to the natural flow of said waters, and inevitably pour the same in great and increased volume upon the land of the plaintiff, to his great injury. The waters thus discharged upon the plaintiff's land will cause large portions of said land to be flooded in time of storm, will cause gullies to be made therein, and will cause to be deposited upon said land large quantities of silt, sand, and various kinds of debris, whereby the said property will be damaged to a great and irremediable extent and will decrease materially in value.

The foregoing statement merely summarizes the facts which are set forth in great detail in the complaint. Plaintiff's prayer is for an injunction to restrain the defendants from maintaining San Antonio Avenue in the condition in which it now is or in any condition which will make the same a watercourse for the surface waters aforesaid, or that the defendants be required to provide suitable means to carry off from said avenue any storm waters which may pour down the avenue and effectually to prevent said waters from reaching or flooding or in any way damaging plaintiff's property.

We are satisfied that the complaint stated a cause of action. The facts alleged therein make fully as strong a case for the plaintiff as those shown in the recent case of *Dick* v. *City of Los Angeles*, 34 Cal. App. 724, [168 Pac. 703], where the city was held liable for damages caused to the plaintiff's real property by the grading of one of its streets adjacent thereto, whereby surface water, which theretofore had not flowed there, was caused to accumulate in unusual quantities and was turned upon the land of the plaintiff. (See, also, *Stan-*

*ford* v. *San Francisco,* 111 Cal. 198, [43 Pac. 605]; *Shaw* v. *Town of Sebastopol,* 159 Cal. 623, [115 Pac. 213]; *Baker* v. *Town of Akron,* 145 Iowa, 485, [30 L. R. A. (N. S.) 619, 122 N. W. 926]; Dillon on Municipal Corporations, 5th ed., sec. 1736.)

We find no merit in the suggestion made by respondents that the plaintiff is not entitled to an injunction because the work of which he complains had been completed before the commencement of this action. If it were important to do so, we might observe that according to the allegations of the complaint it does not appear that the flooding of his land has yet occurred. The charge is that such flooding inevitably will occur in times of rainfall or storm. Besides this, it is almost axiomatic to say that an injunction against a continuing trespass will not be denied merely because acts of trespass actually have been accomplished.

The judgment is reversed.

James, J., and Works, J., *pro tem.,* concurred.