[Civ. No. 14125.   Second Dist., Div. Two.   Sept. 16, 1943.]

LOS ANGELES BRICK & CLAY PRODUCTS CO. (a Corporation), Respondent, v. CITY OF LOS ANGELES et al., Appellants.

Ray L. Chesebro, City Attorney, Frederick Von Schrader, Assistant City Attorney, and Wilbur Bassett, Deputy City Attorney, for Appellants.

C. C. Carleton, Frank B. Durkee, C. R. Montgomery and Robert E. Reed as amici curiae on behalf of Appellant.

Cryer & Jones and George E. Cryer for Respondent.

MOORE, P. J.—By this action plaintiff procured a permanent injunction to abate a storm water nuisance resulting from the city's causing ponded waters on its streets to be discharged upon plaintiff's land. The bases of appeal are insufficiency of the complaint, variance of findings from the pleading, defendants' prescriptive easement, laches, statutory limitation and the court's failure to find on the issue of plaintiff's negligence in grading its tract.

Since 1902 plaintiff has been the owner of a parcel of 12 acres in the Los Angeles industrial district. It lies adjacent to East Seventh Street which bounds it on the north. Its easterly line is practically parallel to Boyle Avenue which extends northerly across the city. Between the avenue and the premises of plaintiff is a residential area within which, in 1912, the city paved two cul-de-sac streets, namely Atlantic and Garnett, which extend the 500 feet from Boyle to plaintiff's land and which are a short distance from the Los Angeles River. They are 40 feet in width, are 10 feet higher at the avenue than at the easterly line of plaintiff's acres, and the surface of each is more than two feet lower than the contiguous ground. Thus with the aid of sidewalks, curbs and gutters the streets have served to collect the storm waters from the area and by reason of the two per cent declivity such waters flow rapidly westward to be discharged upon plaintiff's tract through two 14 inch steel conduits or culverts which were installed by defendants in 1912 and maintained without objection from plaintiff until 1940.

During the 28 years following the paving of the two streets, the surface of the 12 acres was "broken and uneven and abounded with deep holes and hollows" into which the storm waters flowed. There they were quickly absorbed into the gravel strata without detriment to the land. But in the summer of 1940 plaintiff obtained a permit from the city to grade and improve its realty. It removed the hills, filled the holes and leveled the depressions so that the surface of the tract was reduced to a uniform grade sloping from east to west. Thereupon, plaintiff gave notice to defendants that in the land's improved condition the discharge of storm waters would cause serious erosion of the surface and great damage to plaintiff. Such protest was ignored by defendants who continued thereafter to discharge the collected storm waters from the two streets as they had done since 1912. The result was that the improved surface was eroded, channels and gullies were cut across the surface and it is certain that this

would continue with increasing detriment should the waters collected on the streets be forever discharged thereon. In its treatment of this subject the trial court determined that while the storm waters were openly and notoriously discharged upon the parcel for more than 20 years, yet at no time was such discharge caused by defendants adversely or under claim of right and, hence, defendants have neither by uninterrupted enjoyment nor otherwise acquired an easement or any prescriptive right in plaintiff's land.

Upon these facts appropriately pleaded, by its complaint plaintiff demanded that defendants be required to make other provision for disposing of the collected storm waters and that they be permanently enjoined from allowing such waters to be discharged upon the 12 acres. Judgment for permanent injunction was entered as demanded by plaintiff and defendants were ordered to remove the steel conduits which protrude for more than 20 feet upon plaintiff's land.

The complaint is sufficient. A cause of action for injunction is alleged. The property of plaintiff was not expropriated by the city directly or in reverse. The power of a city to proceed under eminent domain does not convert its wrongful trespass into an act of virtue because municipal agencies have precipitated accumulated storm waters upon the land of another. (*Conniff* v. *San Francisco*, 67 Cal. 45 [7 P. 41].) There is no statute which authorizes such piratical practice. None could do so under either the state or the federal Constitution. When any person corporate or natural interferes with natural conditions and causes surface water to be ''discharged upon the land of his neighbor in greater quantity or in different manner'' than would occur under natural conditions such injurious acts will be enjoined. (*Heier* v. *Krull*, 160 Cal. 441, 444 [117 P. 530].) Neither may a municipal corporation intentionally divert water from its streets by artificial means and discharge it with collected force and destructiveness upon the property of an adjoining owner. (18 Cal.Jur. 1102; *Farrell* v. *City of Ontario*, 36 Cal. App. 754 [173 P. 392].)

A municipality is not exempt from liability for a trespass caused by its corporate act. It is liable for the damage caused by the dumping of storm water onto privately owned realty even though each act in constructing a street improvement is done according to statute. (*Stanford* v. *San Francisco*, 111 Cal. 198 [43 P. 605].) It is a positive interference with the owner's free enjoyment of his property

wrongfully to divert accumulated waters onto his land which would not naturally flow thereon. (*Learned* v. *Castle*, 78 Cal. 454, 460 [18 P. 872, 21 P. 11].) ▮ Moreover, the permissive use of plaintiff's premises for a time by defendants will not defeat plaintiff's right to an injunction inhibiting a continuance of such use. (*Ibid.*)

▮ An allegation that defendants were negligent in creating the nuisance was not essential to the statement of a cause of action. A trespass voluntarily committed causes no less detriment than one resulting from neglect. Defendants achieved exactly what they set out to do, namely, to send ponded flood waters from public streets onto plaintiff's private acres.

▮ Neither is the complaint lacking in equity because of its failure to allege irreparable injury. The facts recited allege a nuisance *per se* which entitles plaintiff to an injunction. ▮ The possibility that a continued trespass might ripen into a servitude is sufficient (*Learned* v. *Castle, supra.*)

### To File a Claim, Not Required In Trespass Cases

▮ It is a vain contention that the complaint is insufficient because of the absence of an allegation of a compliance with the charter requirement (sec. 376) that a claim must first be presented to the city. Such provision applies only to claims for money. ▮ Since it is in derogation of common right it must be strictly construed. (*Giuricevic* v. *Tacoma*, 57 Wash. 329 [106 P. 908, 28 L.R.A.N.S. 533] ; 19 R.C.L. 1041.) ▮ Such provision cannot by any construction be made applicable to a suit to abate a nuisance. (*Pinkum* v. *City of Eau Claire*, 81 Wis. 301 [51 N.W. 550, 553].) Failure to allege the presentation of a claim does not even prevent the recovery of damages demanded as incidental to the injunction to abate a nuisance. (*Murcott* v. *City of New York*, 181 App.Div. 171 [168 N.Y.S. 50].) The assertion that plaintiff sought an injunction to avoid the plea of statutory limitation is a gratuity and is without factual foundation.

▮ Anything is a nuisance which obstructs the free use of property so as to interfere with its comfortable enjoyment (sec. 3479, Civ. Code) and injunction is the traditional method of abating a nuisance. (14 R.C.L. 315.) ▮ Because the victim of a nuisance may in the alternative recover damages he is not for that reason obliged to renounce his right to injunction and sue for damages only. (*Katenkamp* v. *Union Realty Co.*, 6 Cal.2d 765, 776 [59 P.2d 473].)

## No Variance of Findings From Pleading

In contending that the findings do not follow the complaint appellants direct our attention to the following allegation of the complaint:

"Defendants have installed . . . and now maintain without legal right and without permission . . . of plaintiff conduits or culverts for carrying off water from said streets." Appellants argue that this language was intended to mean that *defendants have maintained the conduits without the permission of plaintiff since 1912.* The complaint in its entirety completely confutes such construction. The facts found are that from 1912 until 1940, by reason of the nature of the terrain of the tract, no detriment was caused by the storm waters. It was only after the land had been leveled that plaintiff withdrew the license theretofore enjoyed by the city and demanded that its nuisance be abated. Therefore, the discharge of the waters was "without the permission of plaintiff" only after it had protested. In the light of such facts the declaration that "defendants *now* maintain without permission of plaintiff conduits for conducting the storm water onto plaintiff's land" does not require any finely filtered legalistic logic to unfold its meaning, namely, that the nuisance is maintained at the present time.

The claims that the city's agencies entered upon the property in the course of public works in 1912 and that the conduits have since 1912 been "maintained openly, notoriously and against the will of plaintiff and without his consent," are not supported by any evidence in the record and the finding is to the contrary. Moreover, it was the duty of the court to find in favor of plaintiff since there were no facts to compel the conclusion that the city's use of the 12 acres as a dumping ground for the storm waters was adverse prior to December, 1940. (*Brandon* v. *Umpqua Lumber & T. Co.*, 26 Cal.App. 96 [146 P. 46]; *Clarke* v. *Clarke*, 133 Cal. 667 [66 P. 10].) Inasmuch as defendants failed to offer any proof that their use of the land was adverse they are in no position to criticise the finding made. (Sec. 321, Code of Civ. Proc.) A prescriptive right could have been established by plaintiff's acquiescence only after the city's license to discharge the storm waters thereon had been revoked.

## Action Not Barred

The action was barred neither by laches nor statutory limitation. Should we consider the protest of December,

1940, as the date on which the cause of action arose, only seventeen months elapsed prior to the filing of the complaint herein. There is no such period of limitation prescribed by statute to bar an action for the recovery of an interest in land. (Sec. 321, Code Civ. Proc.) ▆▆▆ Laches is a fact to be determined by the court from the evidence. ▆▆▆ No date was established on which the cause of action arose. After the license to discharge the ponded waters upon plaintiff's tract had been revoked no occasion for legal action could have arisen until defendants should cause other flood waters to pour upon the land. There is no direct evidence of the date upon which that event occurred. In the absence of such proof it is assumed that the court below drew inferences from established facts to warrant the finding that plaintiff was free of laches. The maintenance of the conduits to discharge the waters onto plaintiff's acres was a continuing potential wrong which ripened into actuality when the storm waters poured through. ▆▆▆ Having never asserted a claim of right adversely to plaintiff's title prior to filing their answer, no period of prescription ever started to run. (*Livermore* v. *Beal,* 18 Cal. App.2d 535, 549 [64 P.2d 987].) In the absence of such claim adverse to plaintiff it could not be guilty of laches. While it may be assumed that occasional storm waters flowed through the steel conduits after plaintiff's protest in December, 1940, there is no evidence that such protest was at any time flatly rejected.

▆▆▆ Moreover, the plea of laches must fail where no damages are proved to have been suffered by the pleader. Conceding that defendants relied upon the perpetual acquiescence of plaintiff in allowing the discharge of the storm waters, they neither expended money in improvements upon the land, paid taxes thereon, nor made any other investment by reason of such reliance either before or after plaintiff's protest. Neither had they on any account suffered detriment by reason of plaintiff's delay in filing suit. (19 Am.Jur. 343, sec. 498.) This fact alone is sufficient to defeat the plea. (30 C.J.S. 541.)

## No Easement Established

▆▆▆ No easement or prescriptive right was established. Titles to lands are not readily snuffed out by the brandishing of a slight presumption or by deductions from wishful thinking. Since the nomad ceased from his wanderings the progress of man has been reassured by his consciousness that his ownership of land was by the custom of his tribe or by the

law of his state rendered secure against the predatory rapacity of the greedy and the malevolent. ▉ An owner cannot be disseized of his land or be deprived of its free enjoyment without fair consideration. (*Niles* v. *City of Los Angeles,* 125 Cal. 572, 576 [58 P. 190].) ▉ If claim of ownership is made to land on the ground of occupancy or of a prescriptive right to use it, he who asserts such right is obliged to establish that he has occupied it adversely to the titular owner for five years. (Sec. 321, Code Civ. Proc.) He must clearly prove (1) that his use or occupancy was hostile to the record title; (2) that such use was open, continuous, and notorious; (3) that it was made under claim of right; (4) that such claim during the five years was so asserted as to convey to the titular owner a knowledge of the asserted claim. ▉ Such proof must clearly overcome the presumptions that occupation by the claimant is deemed in subordination to the legal title; that all rights in and to the land are vested in the record owner, and that the use of it by the claimant was made by express permission or by silent acquiescence. (*Clarke* v. *Clarke,* 133 Cal. 667 [66 P. 10].) ▉ Because plaintiff through its kindness allowed defendants to abuse its land no easement was thereby gained (*Middlesex Co.* v. *Lowell,* 149 Mass. 509 [21 N.E. 872]). Such permissive use could not have ripened into a right of perpetual enjoyment; and this holds true where the license is implied as well as where it is expressed (19 C.J. 887; *Clarke* v. *Clarke, supra.*)

### GIST OF THIS ACTION, TO ABATE A NUISANCE

▉ In support of their claims (a) that they hold a prescriptive right in the 12 acres and (b) that the action is barred, defendants contend that the installation of the conduits was a part of a completed public improvement. They pursue their logic by invoking the application of authorities which are not in point and by boldly asserting that the action arose out of the mere presence of the two conduits projecting from the streets onto the land involved. If this action had been brought solely to effect the removal of the steel pipes it would have slight basis for recovery. They might have been by plaintiff severed at the property line after a reasonable delay following the protest. The gist of this action is the abatement of the nuisance created by the discharge of the accumulated waters onto plaintiff's land. Should such flow cease the damage caused by the presence of the pipes would be *damnum absque injuria.*

APPELLANTS' AUTHORITIES

The cases cited treat of those situations in which public corporations or other agencies of the State were vested with the right to invoke the power of eminent domain and which, without condemnation proceedings, entered upon private lands, completed public works thereon and used them for a time with the acquiescence of the owner of the premises. Equity denies relief under such circumstances for three reasons, namely: (1) the owner could not have defeated expropriation proceedings; (2) a possessory right should not be used as a means of extortion; and (3) the public convenience outweighs the owner's possessory right. Such doctrine controlled in the cases cited by defendants. (*Newport* v. *Temescal Water Co.*, 149 Cal. 531 [87 P. 372, 6 L.R.A.N.S. 1098]; *Miller & Lux* v. *Enterprise Co.*, 169 Cal. 415, 417 [147 P. 567]; *Gurnsey* v. *Northern Cal. Power Co.*, 160 Cal. 699 [117 P. 906, 36 L.R.A.N.S. 185]; *County of Los Angeles* v. *Rindge Co.*, 69 Cal.App. 72 [230 P. 468]; *Gordon* v. *Cadwalader*, 172 Cal. 254 [156 P. 471]; *Collier* v. *Merced Irrigation*, 213 Cal. 554 [2 P.2d 790]; *Sutro Heights Land Co.* v. *Merced Irrigation Dist.*, 211 Cal. 670, 690 [296 P. 1088]; *Los Angeles Athletic Club* v. *City of Long Beach*, 128 Cal.App. 427 [17 P.2d 1061].) To close a public highway constructed over private premises or to remove a section of a pipeline, power line or railway laid thereon would destroy public rights which have already intervened. Obstruction to progress is not thus allowed. In the cases involving irrigation districts and the upper riparian proprietors the public had gained superior rights while the legal owners of the land or water rights involved acquiesced in the use of their properties by the public corporation. In the case last cited the athletic club made no objection while the city at an immense cost constructed the extensive works, drove piles and placed between them huge granite boulders. It was denied relief on the grounds of public policy. The granting of injunctions in such cases would serve only to inconvenience the public by depriving it of advantages gained by the construction of facilities for public use near or upon land which would have been awarded under condemnation proceedings, while the fair value of the land taken can be paid after the improvement as well as before. For this reason the courts have consistently referred such claimants to courts of law to recoup their losses. (*Frost* v. *City of Los Angeles*, 181 Cal. 22 [183 P. 342, 6 A.L.R. 468]; *Cubbins* v. *Mississippi River Commission*, 204 F. 299.) It

cannot be said that the benefit to accrue to plaintiff by abating the nuisance would be slight as compared to the injury to defendants. Plaintiff will now enjoy the unrestricted use of a valuable property. Defendants can at a comparatively slight expense conduct by flume the storm waters to the Los Angeles River or into a public drain.

Of course, if the public has no interest in the construction whose removal is sought, the rule protecting such improvement from injunctive relief does not apply. (*Miller & Lux* v. *San Joaquin L. & P. Corp.*, 8 Cal.2d 427 [65 P.2d 1289].) The conduits are not parts of a public improvement. They cost but little and were not indispensable to the public interest. They were installed after the streets had been paved. They did not hasten the discharge. Gravity only carried the ponded waters from the streets. The nuisance created was merely facilitated by the presence of the conduits and was thereby rendered more destructive.

THE CONDUITS, ONLY INCIDENTAL

The contention that the pipes are a part of a completed public work and for that reason cannot be abated is therefore without merit. The streets were not constructed upon plaintiff's property. But at the time of their construction they were graded so that flood waters falling upon the area served by them would flow toward the 12 acres. When the pipes shall have rusted away the sloping pavements will still continue to discharge their accumulated waters upon the 12 acres unless the judgment now under review be sustained. It is the damage to the land caused by the flow of such flood waters that plaintiff would avoid and which the chancellor below decreed should not be repeated. A city has no right to arrange and maintain its paved streets so that in seasons of flood they will serve as channels for draining surface waters resulting in the deposit of silt, sand and debris upon adjacent lands or in the cutting of gullies in them to the detriment of the owner. (*Farrell* v. *City of Ontario*, 36 Cal. App. 754 [173 P. 392].)

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.

A petition for a rehearing was denied October 4, 1943, and appellants' petition for a hearing by the Supreme Court was denied November 8, 1943. Gibson, C. J., Edmonds, J., and Traynor, J., voted for a hearing.