GEORGE R. TAYLOR ET AL vs. MONTGOMERY BLAIR ET AL.

1. If a party asking leave to amend, declines, when required by the court, to state in what particular he wishes to amend, leave to amend may be refused.

2. Though, under ordinary circumstances, no limitation can operate in favor of a trustee, yet where time and long acquiescence have obscured the nature and character of trust, or the acts of the parties, or other circumstances give rise to presumptions unfavorable to its continuance; in all such cases, a court of equity will refuse relief, upon the ground of lapse of time, and its inability to do complete justice.

## ERROR to St. Louis Circuit Court—Chancery.

### MUNFORD, for appellants.

I. Laspe of time cannot be taken advantage of on demurrer.

II. There must be extraordinary negligence for time to run against a fraud.

III. It will not run in favor of a trustee until the trust is clearly at an end.

IV. A party who acquires the legal title with notice of a prior equity will hold the same as trustee, and a court of equity will decree his legal title to the equitable owner.

V. An agent or attorney cannot purchase on his own account, that which he was empowered and employed to purchase for his principal. The cases in 4 Howard, and the authorities there cited are full on this point.

VI. Pane acquired at the sheriff's sale such a title a court of equity will protect.

### BLAIR, for defendant in error.

In support of the decree of the circuit court, in dismissing complainants' bill, the defendants insist:

I. That the claim, as presented by the bill, is a stale claim and such a case as courts of equity will not relieve: Delave vs. Delave, 7 Bro. p. c., by Timelus, 279; 1 Car Law Rep., 508; 3 Mur. 583; 1 Russell & My., 236, 523; 2 Hawk. 669; 1 Coxe's Cases, 28; 4 Desan, 91; 2 Vesey, J., 90; Laws of Mo., 1849, p. 74, § 4.

II. That it appears by the bill, that the claim is bound by the statute of limitations: 3 Yagu, 201; 4 Man. & Heh., 139; 1 Rand., 284; 4 Wash., c c. 631; 7 J. C. R. Maddock vit. 1, p. 257.

III. The statute of limitations, applicable to this case, is that which would apply to an action for damages for the usage here complained.

IV. No trust is stated in the bill. It is said that Magenis was a trustee for Paul, with respect to the land sued for, but the facts stated in the bill, warrant no such inference, but the contrary: 2 Lugdon on vendors 139, and cases therein cited; 2 J. C. R. 409.

As to amendments of a bill, Mitford, p. 215 to page 275.

### BIRCH, J., delivered the opinion of the court.

In this case the bill states the plaintiffs are the sole heirs of Gabriel

Paul, who died in 1845, being the equitable owner of a lot on Main street, in block No. 16, containing twenty feet front by seventy-five feet deep, in the city of St. Louis. By way of demonstrating their title in equity, as thus alleged, the bill traces the legal title back to one Thulegon, against whom, in June 1821, Paul recovered a judgment for $1807, under execution upon which, and other cotemporaneous judgments, the lot was sold by the sheriff on the 5th of September following, and Paul became the purchaser of it and of three others, for the aggregate sum of twenty-six dollars.

The bill then proceeds to state, for the relief of debtor and creditor, the sheriff gave to Paul a certificate of purchase, a duplicate whereof having being filed and recorded is made an exhibit in the bill. It is further stated that the lot was never redeemed—that there remained a large balance on the judgment of Paul, which, some eighteen months after the sale aforesaid he transferred to Bryant & Schlater of Philadelphia; that after the time to redeem the property had expired, Paul discovered legal difficulties in the way of getting a deed, and employed Arthur L. Magenis, Esq., as his attorney to have the sale perfected and get him a proper deed—giving the said Magenis the sheriff's certificate of sale for that purchase. It is next alleged in the bill that the said Magenis, who was an attorney at law, acting in bad faith toward his client, (Paul) and forming a design to get said lot on his own account, procured an alias execution to issue on Paul's judgment against Thulegon —the record not showing its assignment to Bryant & Schlater—under which, in August 1829, the lot in question was again sold, and being bid off by Magenis for $150; he fraudulently procured a deed to be made to himself, although acting as the attorney of said Paul. It is afterwards stated that Magenis settled with Bryant & Schlater for the sum of his said bill; but it is alleged that Paul, in his life time, offered to pay it back to him, together with interest, cost and charges, and that his heirs (the complainants here) yet offer to do so. It is further and finally charged in the bill, that in 1830 Magenis again purchased said lot at execution sale, for the sum of $17, as being the property of one Sanguinette, notwithstanding he had sold *all* his interest in it to Thulegon in 1820; and this is alleged to have been done fraudulently, for the mere purpose of still more complicating the difficulties in the way of procuring a title by Paul—in consideration of which the bill prays appropriate relief.

Blair, a trustee under the will, and the two infant children of Magenis, are made parties to the suit, the object of which is to perfect and confirm the title acquired by virtue of Paul's purchase at the sher-

iff's sale in September 1821, and that the subsequent purchases of Magenis be held and decreed to have been made for Paul, his client and principal.

The defendants demurred—were sustained—and the bill dismissed. The plaintiffs asked leave to amend, but the court refused permission, unless they would state (which they declined to do) in whac particular it was desired—and it is upon this decision, and the previous one sustaining the demurrer, that they have brought the case here.

Concerning the motion for leave to amend, as the court could not know whether it really would better the case, or be otherwise allowable, until after it was apprised of the nature o the amendment which was had in view, and as the plaintiff retused to disclose such information, we of course can discover no error in the fact that the declension of the court seems to have been peremptory as the declension of the counsel. The demurrer alone remaining, no legitimate necessity arises for deciding how far we might be disposed to entertain and investigate a controversy of this character between living parties—that not being the case here, in reference either to the plaintiffs or defendants. It appears, and is inferable from the bill itself, that from the year 1829 to 1845, Paul, the ancestor of the complainants, and Magenis, the ancestor of the defendants, raised in the city of St. Louis, in daily view of the property which it is now alleged by the heirs of one party, the ancestor of the other (betraying his trust as a lawyer) had openly and systematically swindled their father out of. During all this period of sixteen years, Magenis was alive, to explain, answer and defend for himself, and it seems almost too incredible for supposition, that had the transaction complained of been unsusceptible of explanation over which the grave has since probably closed, a suit would have been deferred until after the death of both the original parties, which involved, according to the statement of the bill, the title to property "worth at least $5000."

These reflections are not designed, of course, as the slightest imputation upon the integrity of those who have brought the present action upon such information as they had acquired, but as suggesting and demonstrating the fitness of the authority inseparable from all just conceptions of the functions of the jurisprudence which has been invoked—namely, its declension to entertain claims presenting in their circumstances the strongest doubts whether the period for doing equity and justice between the parties has not passed by.

The bill itself, indeed, being utterly indefinite as to the time when Paul offered to pay back to Magenis the $150 which he paid to Bryant

& Schlater, on the second sale of the property in 1829, suggests at least one hypothesis (amongst many) that as he had been also the attorney of these persons, (who were creditors of Paul) the circumstances under which he had to pay them the money on his bid, and lie out of it afterwards, may have been such as both legally and morally to dissolve any previous professional or implied relation of trusteeship to Paul, and put him to the prudential necessity of more fully protecting a title thus become his own, by purchasing in another one. This hypothesis, however, is introduced mainly in illustration of the general reasoning upon which the authorities proceed—namely, that the period may have passed where it would be longer safe to exercise the judicial power.

To say, therefore, that the bill represents Magenis to have been a trustee, in favor of whom, under ordinary circumstances, no limitation can operate, is not to meet the argument upon which the ablest chancellor in our own country and in England have rested their declension to entertain cases not more stale or doubtful than the present one. Judge Story, referring to the authorities alluded to, deduces from them the general conclusion which they so well warrant, that where time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties, or other circumstances give rise to presumptions unfavorable to its continuance; in all such cases, a court of equity will refuse relief upon the ground of lapse of time, and its inability to do complete justice. This doctrine will apply even to cases of express trust, and a portion of it will apply with increased strength to cases of implied or constructive trusts."

Upon the general doctrine, (sec. 1520) his language is no less emphatic, and referring, as he does, to more than twenty leading cases in England and the United States, his commentary upon them is deemed sufficiently apposite, and ineffectual to be quoted and adopted in the conclusion of this opinion, affirming the action of the court below.

"A defence peculiar to courts of equity, is that founded upon the mere lapse of time, and the staleness of the claim, in cases where no statute of limitations directly governs the case. In such cases, courts of equity act sometimes by analogy to the law, and sometimes act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, by refusing to interfere, where there has been gross laches in prosecuting rights, a long and unreasonable acquiescence in the assertion of adverse rights."

Acting upon these views of his duty, and saying nothing here respecting the very doubtful preliminary question, as to whether Paul ever had such a foundation for a title as could have been subsequently per-

fected, we think the chancellor below did well to decline the uncertain investigation to which the case must almost inevitably have given rise. His decree, therefore, which dismissed the complainants bill, is affirmed.

RYLAND, J.

I do not concur in this opinion—I cannot assent to its staleness as a ground for dismissing the complainants' bill—sixteen years in my opinion are not enough to warrant the chancellor in deciding upon that ground.