[No. 8903. In Bank. — May 26, 1886.]

## ROGER O'DONNELL, Appellant, v. JOHN L. JACKSON, Respondent.

SPECIFIC PERFORMANCE — LACHES — EJECTMENT. — The plaintiff and defendant entered into an agreement for the sale of the lands in controversy, and after obtaining possession the defendant objected to the title. The plaintiff subsequently gave notice that he repudiated the contract, for the reason that the sale was for cash. More than three years thereafter, the plaintiff began this action to recover possession, and the defendant filed a cross-complaint for a specific performance. *Held*, that the laches of the defendant precluded his right to have the agreement executed.

APPEAL from a judgment of the Superior Court of Lake County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*R. W. Crump*, for Appellant

*Welch & Brett*, for Respondent

THORNTON, J. — We are of the opinion that a valid contract in writing was made between plaintiff and defendant on or about the 10th of December, 1878, for the sale by the former to the latter of the land in controversy, for the sum of $1,130, to be paid in cash on the execution of a deed by plaintiff.

At the time of the contract the land was under administration in the Probate Court for the city and county of San Francisco, as part of the estate of Hugh O'Donnell, deceased. The decedent died intestate. The land descended to the heirs of decedent, who resided in Ireland. The plaintiff was not an heir of decedent, and the records in the recorder's office of Lake County, where the land was situated, showed no conveyance by the heirs to the plaintiff. This, defendant ascertained about December 27, 1878. The defendant then objected to the title, on the grounds above mentioned.

It appears that plaintiff was the owner of an undivided

moiety of three fourths of the land when the contract was executed, and that he has acquired the title to the other fourth since this action was commenced. On or about the 20th of April, 1879, the plaintiff repudiated the contract, of which, on the date just above mentioned, defendant was informed. The repudiation was based on the ground that the sale was for cash, and that he (plaintiff) would not go to the expense of getting the land out of probate to effect a sale of so small a tract.

We are of opinion that the improvements made on the land were made without the sanction or approval of the plaintiff. Matthews's authority from plaintiff only extended to making the sale, and he had no power to authorize defendant to make any such improvements. As they were made without authority, they may be laid out of the case.

The court finds, and there is evidence to sustain it, that the defendant had the money on hand to make the payment, from the 10th of December, 1878, to the 30th of April, 1879. The evidence showed that he had borrowed the money at one and one fourth per cent per month, and had paid the interest on it during the period above mentioned. He testifies that he never paid or offered to pay the purchase-money, because O'Donnell did not make him a deed, and because about December 27, 1878, he found out that plaintiff's title was not good.

Thus the matter stood until this action was commenced, on the 23d of March, 1882, by the plaintiff, to recover possession of the land described in the complaint, as a defense to which the defendant set up the contract above mentioned, and asked that it be specifically executed. This he did in a cross-complaint filed July 5, 1882. The defendant did nothing for more than three years after he knew that plaintiff had refused to abide by the contract. He did not pay or offer to pay anything, and never seems to have urged the consummation of the contract, though during the whole time he was

enjoying the possession of the land without paying anything for it.

Under these circumstances, is a party entitled to have an agreement for the purchase of land executed by a court of equity? Can he lie by, as defendant did, for more than three years, take no steps in the matter of the purchase until sued for the possession, and then defend by a cross-action for a specific performance? We are of opinion that there is such a manifest lack of diligence on the part of the defendant as to preclude all claim to a recovery. The uncontradicted evidence in the case, we think, shows an abandonment of the contract by the defendant. The significant circumstance appears in the testimony, that the defendant had to borrow the money to pay for the land; that the lender kept the money for him from about the 1st of December, 1878, until about the middle of April, 1879, during which period the defendant paid interest on it, and no longer. The testimony on this point is uncontradicted. The borrowed money, it thus appears, was given up about the middle of April, 1879, about which time the plaintiff informed him, through one Matthews, that he would no longer abide by the contract. Why was this borrowed money surrendered at the time mentioned to the control of the lender unless the defendant had abandoned the contract? A court of equity will not execute a contract in favor of a purchaser under such circumstances. (*Brown* v. *Covillaud*, 6 Cal. 572; *Green* v. *Covillaud*, 10 Cal. 317; S. C., 70 Am. Dec. 725.)

In considering this cause we have taken the uncontradicted testimony and based our conclusion on it. We think that the judgment and order denying a new trial should be reversed and the cause remanded for a new trial. So ordered.

Ross, J., McKee, J., Morrison, C. J., Sharpstein, J., Myrick, J., and McKinstry, J., concurred.

Rehearing denied.