[Civ. No. 1577.   Third Appellate District.—December 15, 1916.]

## SUPERIOR CALIFORNIA FRUIT LAND COMPANY (a Corporation), et al., Respondents, v. A. B. GROSSMAN et al., Appellants.

QUIETING TITLE—OWNERS OF DISTINCT PARCELS OF LAND—JOINDER AS PLAINTIFFS.—Under the provisions of section 381 of the Code of Civil Procedure, persons owning in severalty distinct parcels of land may unite in an action to quiet the title to and to remove a cloud from the land, where they all claim under a common source of title.

ID.—SPECIFIC PERFORMANCE — CONTRACT FOR SALE OF LAND — LACHES BARRING RELIEF.—Specific performance of a contract for the sale of land, at the instance of the vendee, is properly denied on the ground of laches where there has been a delay of almost three years and nine months in seeking performance, and no sufficient excuse for the delay shown.

ID.—LACHES—DEMURRER.—The defense of laches can be taken advantage of by demurrer. Such a defense is, in substance, that the complaint does not show equity, or fails to state facts sufficient to constitute a cause of action.

APPEAL from a judgment of the Superior Court of Colusa County.   H. M. Albery, Judge.

The facts are stated in the opinion of the court.

R. H. Countryman, for Appellants.

De Ligne & Jones, and H. T. Hiatt, for Respondents.

PLUMMER, J., *pro tem.*—Plaintiffs instituted this action to remove a cloud therefrom and quiet their title to a tract of land, embracing 6,173 acres, situate in the county of Colusa. The defendants, by answer and cross-complaint, sought specific performance of a certain option or agreement of sale relating to the same premises. Plaintiffs had judgment and decree of the trial court, as prayed for, from which judgment and decree defendants appeal, the merits of which may be determined by the solution of two questions:

First: Was the trial court right in holding that the plaintiffs were entitled to unite in the prosecution of this action?

Second: Was the trial court correct in sustaining the plaintiffs' demurrer to the defendants' cross-complaint?

The cause comes before this court upon the judgment-roll, and involves only the ruling of the trial court upon the demurrers interposed to the pleadings in the court below. The facts as gleaned from the pleadings are as follows:

On the twenty-first day of March, 1908, Hyman Estate Company, being the owner of 35/36 of the tract of land above referred to, entered into an agreement or option to purchase with one S. Rummelsburg. This agreement was recorded on the seventh day of July, 1910. On the twelfth day of March, 1910, the said Rummelsburg entered into a contract or option of sale with appellant Grossman for the whole of the tract of land referred to, which agreement or option was recorded on the sixteenth day of March, 1910. On the twenty-ninth day of March, 1910, it is alleged that the appellant Grossman, in writing, demanded of Rummelsburg a deed of conveyance of said real property, and of the whole thereof, and also tendered and offered to pay the purchase price of said property. That on the sixth day of May, 1910, the said Rummelsburg entered into an agreement to convey the said lands and premises to one Fleming, which agreement was recorded on the same day. That on the tenth day of May, 1910, the Hyman Estate Company acquired the outstanding 1/36 interest in and to the lands and premises hereinbefore referred to, the deed to the same being recorded on the twelfth day of May, 1910. That on or about the first day of July, 1910, the said Fleming assigned his interest in the contract theretofore obtained by him from Rummelsburg to the fruit company, plaintiff in this action. This assignment was recorded on the same day. That on or about the twenty-sixth day of August, 1911, the Hyman Estate Company granted and conveyed all of the premises herein referred to to the said Rummelsburg, the deed being recorded on the day of its date. On the second day of July, 1912, the said Rummelsburg granted and conveyed the premises involved herein to the plaintiff, fruit land company, which deed was also recorded on the day of its date. The other plaintiffs herein have succeeded to the interest of the fruit land company in a portion of the premises involved in this action, by deeds of conveyance from said company. The price of the land named in

the option given to the defendant Grossman was slightly in excess of eighty thousand dollars.

The complaint filed by the plaintiffs is in the usual form of an action to quiet title, or to remove cloud therefrom, and is directed to the option or agreement to purchase executed and delivered by Rummelsburg to the defendant Grossman. This instrument, by its terms, included and covered all the premises owned by the respective plaintiffs, and constituted the cloud upon the title of the lands held by them severally, and its removal is the object of the action now before the court.

Section 381 of the Code of Civil Procedure, provides that "any two or more persons claiming any estate or interest in lands under a common source of title, whether holding as tenants in common, joint tenants, . . . may unite in an action against any person claiming an adverse estate or interest therein, for the purpose of determining such adverse claim, or of establishing such common source of title, . . . or of removing a cloud upon the same."

The common source of title through whom all the parties to this action assert an interest in the real estate hereinbefore referred to is the person Rummelsburg. Plaintiffs derived their title from Rummelsburg, through Fleming, and the defendants claim directly from Rummelsburg. It is difficult to imagine a case that would more completely fit the provisions of section 381 of the Code of Civil Procedure. The action herein is authorized by section 749 of the Code of Civil Procedure, and the parties who may unite in the prosecution of it are provided for by section 381, as above stated. That this action is properly prosecuted, and that the plaintiffs were properly joined, and that the trial court did not err in overruling the defendants' demurrer for misjoinder, seems to us beyond question. (*Gillespie* v. *Gouly,* 152 Cal. 643, [93 Pac. 856].) A number of other cases might be cited in support of the ruling of the trial court, but this one seems sufficient.

The second question for determination is, Was the ruling of the trial court correct in sustaining the plaintiffs' demurrer to the defendants' cross-complaint? The cross-complaint sought to set up a cause of action for specific performance of the option contract dated March 12, 1910, executed by Rummelsburg and the defendant Grossman, and to

enforce the same for the conveyance of the lands and premises herein referred to as against the plaintiffs in this action. Many reasons have been urged by counsel, *pro* and *con,* as to the correctness or incorrectness of the ruling of the trial court, but, for the reasons hereinafter stated, only one needs to be considered, as it is determinative of this question.

The option contract referred to bears date of March 12, 1910. The cross-complaint for specific performance was filed December 8, 1913, almost three years and nine months later. On May 6, 1910, Rummelsburg entered into an agreement to convey the lands and premises to George Fleming. This agreement was recorded on the day of its date, less than two months after the date of the option given by Rummelsburg to the appellant Grossman. All that appellants have ever done toward seeking performance of their contract appears in the following allegation: ''That the said Grossman, on the twenty-ninth day of March, 1910, in writing, demanded of said Rummelsburg a deed of conveyance of said real property, and of the whole thereof, and tendered and offered to pay the purchase price of said property in the sum named and fixed in said agreement, and according to the terms of said agreement, etc.'' The cross-complainant further alleges: ''That no time was fixed in said contract for its performance, or for payment of the purchase price mentioned therein.'' From which it appears, from the very language of the defendants' cross-complaint, that the pleader did not state, and the trial court could not conclude, that any valid tender of the money representing the purchase price, to wit, $80,249, had ever been made. It further appears that at the date of the alleged tender the cross-complainant knew that the Hyman estate did not own all of the premises for which Grossman was demanding a deed of conveyance. This interest belonged to a minor, and, by the defendants' cross-complaint, was not acquired until the tenth day of May, 1910. After this date, it does not appear that any kind of tender or offer of performance was made by either of the cross-complainants in this action until the eighth day of December, 1913, at which time their pleadings in this action were filed. On the sixth day of May, 1910, the Fleming agreement was made a matter of record, and the subsequent instruments hereinbefore referred to were from time to time recorded; the plaintiffs went into possession thereunder, notwithstanding which the

cross-complainants remained silent and inactive for nearly four years.

Have the cross-complainants lost their right of action, if any, in equity, by reason of laches? We think so. The language of Justice Brewer, quoted in the case of *Troll* v. *City of St. Louis,* 257 Mo. 626, [168 S. W. 175], where the doctrine of laches is thoroughly considered, appears pertinent: "No doctrine is so wholesome, when wisely administered, as that of laches. It prevents the resurrection of stale titles, and forbids the spying out from the records of ancient and abandoned rights. It requires of every owner that he take care of his property, and of every claimant that he make known his claims. It gives to the actual and longer possessor security, and induces and justifies him in all efforts to improve and make valuable the property he holds. It is a doctrine received with favor, because its proper application works out justice and equity, and often bars the holder of a mere technical right, which he has abandoned for years, from enforcing it when its enforcement will work large injury to many."

It may be noted, in passing, that the cross-complainants do not allege that they have suffered any injury or any pecuniary loss by reason of the failure of Rummelsburg to convey, or that they will suffer any injury or pecuniary loss unless specific performance is enforced herein. The fact that the Civil Code provides that it is presumed that the damages for failure to comply with the terms of a contract for the sale of real estate will not furnish adequate compensation, does not relieve the pleader from showing such damages and stating a cause for the equitable interposition of the court. (*Herzog* v. *Atchison T. & S. F. Ry. Co.,* 153 Cal. 502, [95 Pac. 898], and cases cited.)

The defense of laches can be taken advantage of by demurrer. Such a defense is, in substance, that the complaint does not show equity, or fails to state facts sufficient to constitute a cause of action. The supreme court of this state has so held in *Marsh* v. *Lott,* 156 Cal. 643, [105 Pac. 968]. It was there also held that "no artificial rule as to the lapse of time or the circumstances which will justify the application of the doctrine of laches can be laid down; that each case, as it arises, must be determined by its own circumstances. If, after the vendor's violation or

express repudiation of the contract of sale, the vendee delays to proceed in the enforcement of the contract for such a length of time as to constitute acquiescence in vendor's breach, or to create a presumption of abandonment of his right to specific performance, relief in equity will be denied.''

In the Lott case the delay was for a period of three years, five months, and a few days, being less than the period which has elapsed in the case at bar. The fact that Rummelsburg may have had no just reason for violating the terms of his agreement with the cross-complainants (assuming, for the purposes of argument, that such is the case—the terms of the agreement are not before the court, and cannot be considered), does not alter the situation. The record shows that Rummelsburg, after giving the option contract to the defendant Grossman, immediately contracted with one Fleming, that the premises were thereafter conveyed to Fleming, and by mesne conveyance passed to the plaintiffs, all of these instruments being of record, and the plaintiffs coming into possession under the instruments referred to. To these facts the language of Mr. Pomeroy, in his work on Specific Performance, is applicable: ''Where one party, even without any just or sufficient reason for so doing, and as a mere act of arbitrary will, notifies the other that he will not perform the contract, shall treat it as at an end—acquiescence by the party notified will cut off the latter's right of enforcement, and this acquiescence will be sufficiently shown by a delay in commencing a suit which would otherwise be too short to prejudice his rights.'' Or, as otherwise stated in 26 American and English Encyclopedia of Law, ''If, after the violation or express repudiation of the contract, the party seeking specific performance delays to proceed for such a length of time as to constitute acquiescence in the breach, or a presumption of abandonment of his right to specific performance, relief in equity will be denied.''

The statute of limitations, which would apply to an action at law, does not determine the question of laches in equity, where one is seeking specific performance. (*Marsh* v. *Lott*, 156 Cal. 643, [105 Pac. 968], and cases there cited.)

The question of laches in actions for specific performance has been passed upon a number of times by the supreme court of this state, and all of them enforce the doctrine, even though the action would not be barred if it were one at law.

In *Fowler* v. *Sutherland*, 68 Cal. 414, [9 Pac. 674], the complaint showed that a period of two years and three months had elapsed before specific performance was sought. No relief was granted, even though the party seeking specific performance had been let into possession.

In *O'Donnell* v. *Jackson*, 69 Cal. 622, [11 Pac. 251], relief was denied on the ground of laches where a period of a little over three years had elapsed. The party seeking specific performance had in this case also taken possession of the premises in controversy.

In *Requa* v. *Snow*, 76 Cal. 590, [18 Pac. 862], it was held that "specific performance of a contract for the sale of land at the instance of the vendee will be refused when there has been an unexplained delay by him of upward of three years in performing the conditions of the contract with respect to the payment of the purchase price." This case cites with approval the case of *Green* v. *Covillaud*, 10 Cal. 317, [70 Am. Dec. 725], where it was held that a delay of between twenty-one and twenty-two months was sufficient to bar the remedy on the grounds of laches.

The only explanation offered by the defendants for their delay herein is that in the summer of 1910 (date not stated), Rummelsburg left the state of California, and did not return until the spring of 1911 (date not stated), and that Rummelsburg never offered to convey, and that no time is fixed in the contract for its performance, or for the payment of the purchase price.

As before stated, within two months after the execution of the option contract delivered to Grossman, Rummelsburg entered into an agreement of sale with other parties, and thereafter conveyed to them. The contract held by the defendants fixed no time for payment, in which case the law provides that it must be within a reasonable period.

The absence of Rummelsburg from the state of California was, at most, only for a few months, and offered no reason why the defendants did not promptly institute action to enforce their right to specific performance, if any existed under their contract, immediately after the agreement of sale entered into between Rummelsburg and Fleming, through whom the plaintiffs claim. During all the period referred to herein, the plaintiffs, as appears from the pleadings and the judgment-roll, were in possession of the premises in dis-

pute, and their title should not be disturbed unless valid reasons exist therefor, especially where the cross-plaintiffs do not even allege that they have been injured.

For the reasons herein given, we are of the opinion that the defendant's cross-complaint does not state facts sufficient to constitute a cause for specific performance, and that the question of laches was properly raised by demurrer.

The judgment of the lower court is therefore affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 12, 1917.