[Civ. No. 5762. Third Appellate District.—January 15, 1937.]

W. B. LIVERMORE, Appellant, v. CARL H. BEAL et al., Respondents.

[Civ. No. 5763. Third Appellate District.—January 15, 1937.]

MARY P. BOYD, as Administratrix, etc., Appellant, v. AMOS W. ELLIOTT et al., Respondents.

[Civ. No. 5764. Third Appellate District.—January 15. 1937.]

ALBERT LOUIS KREISS, Appellant, v. AMOS W. ELLIOTT et al., Respondents.

[Civ. No. 5765. Third Appellate District.—January 15, 1937.]

J. W. LIVERMORE, Appellant, v. CARL H. BEAL et al., Respondents.

536

David E. Peckinpah, W. H. Metson, A. H. Ricketts, C. F. Rafferty, Carey & Gorfinkel, and Bert M. Green for Appellants.

Pillsbury, Madison & Sutro, Morrison, Hohfeld, Foerster, Shuman & Clark, George W. Nilsson, Neil S. McCarthy, Earl L. Banta, Howard P. Hall, Arthur B. Smiley, Bertram L. Linz, A. L. Weil, L. R. Martineau, Jr., Warren Stratton, P. C. Black, Herbert W. Clark, Felix T. Smith and Frederick D. Anderson for Respondents.

PLUMMER, J.—The foregoing entitled cases, four in number, involving the same questions, are presented to us for consideration upon this appeal. In the court below a demurrer, general and special, was sustained to the amended complaint in every one of the actions named, leave to amend being denied. The several amended complaints set forth causes in the nature of actions to quiet title.

In the complaint filed by W. B. Livermore it is alleged that the plaintiff, long prior to the beginning of the action was, and now is the owner of an undivided one-eighth portion of the northeast quarter of section 34, township 21 south, range 17 east, M. D. B. & M., containing 160 acres.

In the action begun by Mary P. Boyd, administratrix, etc., it is alleged that the plaintiff, long prior to the beginning of the action was, and now is the owner of a one-eighth part of the northeast quarter of section 2, township 22 south, range 17 east, M. D. B. & M., containing 160 acres;

In the amended complaint filed by Kreiss it is alleged that the plaintiff, long prior to the beginning of the action was, and now is the owner of a one-eighth part of the southwest quarter of section 2, township 22 south, range 17 east, M. D. B. & M.;

In the amended complaint in the action filed by J. W. Livermore it is alleged that the plaintiff, long prior to the beginning of the action was, and now is the owner of a one-eighth interest in the southeast quarter of section 34, township 21 south, range 17 east, M. D. B. & M., containing 160 acres.

The respective amended complaints to which we have referred set forth that the different defendants claim to have

some interest in the premises described, and that it be adjudged that the respective defendants have no interest therein, and that their claims are without right, etc. The respective amended complaints were filed about the month of May, 1934. The defendants demurred to the different amended complaints on the ground that the amended complaints failed to state a cause of action; that it appears in each of the amended complaints that there was a defect of parties, in that the United States of America is the owner of the fee title in and to the lands and premises involved; that the court has no jurisdiction of the subject-matter of the action; and that the alleged causes of action are barred by laches.

Upon this appeal three propositions are presented for consideration:

1st. How shall a simple and ordinary complaint to quiet title be read, and what matters may be considered in connection therewith?

2d. Is the United States a necessary party to the action?

3d. Are the actions barred by laches?

As a general proposition it may here be stated that we agree with the rules announced in almost every case cited by the appellants in the opening briefs. Those propositions are in support of the following quotation taken from the case of *Mackay* v. *Clark Rig Bldg. Co.,* 5 Cal. App. (2d) 44 [42 Pac. (2d) 341], to wit: "The function of a demurrer is too well settled to require the citation of any authorities for its description. It is axiomatic that a demurrer raises no question of fact and that it assumes the correctness and truth of the facts alleged in the pleading to which the demurrer is interposed. On the hearing of a demurrer, therefore, the court is bound by the facts as alleged in the pleading attacked by the demurrer, and is not entitled to consider facts presented to it through the medium of an affidavit." The latter portion of this quotation is cited as an authority that the court below could not, and that this court cannot look into the various documents emanating from the general land office of the department of the interior of the United States to ascertain any facts relative to the title or right of possession to the premises involved. As supporting the view thus expressed the case of *Hurley* v. *Lake County,* 113 Cal. App. 291 [298 Pac. 123], is cited where an affidavit was filed but not called to the attention of the court, nor was it presented to the court as evi-

dence in the cause. It was held that an affidavit entitled in the cause and filed among the papers, and not presented to the court as a part of the testimony constituted no basis for the support of the action of the trial court. To this extent the position assumed by the appellants is unquestionably sound. It overlooks, however, an essential rule which must guide the court in reading a complaint to which a demurrer has been interposed. It overlooks every fact of which the court is required to take judicial notice. This is clearly set forth in the following excerpt taken from the opinion in the case of *Fey* v. *Rossi Imp. Co.*, 23 Cal. App. 766 [139 Pac. 908, as follows: "Counsel for the plaintiff refuses to discuss the scope and effect of the statute pleaded as an essential element of the plaintiff's cause of action; but in support of the judgment invokes the general rule of pleading which requires, for the purposes of a decision upon demurrer, that the allegations of a complaint must be taken to be true. With this general rule as a basis it is contended that the enactment, scope, and effect of the statute relied upon must be accepted as pleaded. The absurdities which would be certain to result from such a construction of the rule in question are too obvious to require illustration here; and it will suffice to say in response to plaintiff's contention that the general rule of pleading, which admits as true upon demurrer all matters of fact averred in a complaint, has no application to facts of which a court may take judicial notice; and that a demurrer never admits the conclusion of law to be deduced from those facts. (*French* v. *Senate,* 146 Cal. 604 [80 Pac. 1031, 2 Ann. Cas. 756, 69 L. R. A. 556]; *First Nat. Bank etc.* v. *Lewinson,* 12 N. M. 147 [76 Pac. 288]; *Hester* v. *Thomson,* 35 Wash. 119 [76 Pac. 734]; *Gill* v. *Manhattan Life Ins. Co.,* 11 Ariz. 232 [95 Pac. 89].)" This rule is supported, and the reasons therefor clearly stated by the court in the case of *People* v. *Oakland Water Co.,* 118 Cal. 234 [50 Pac. 305], as follows: "It is contended on the part of the appellant that the superior court erred in holding that it could look beyond the face of the complaint in ruling upon the demurrer; that the doctrine of judicial notice is only a rule of evidence, and cannot be applied to the construction of a pleading; that a demurrer admits the truth of every fact that is well pleaded, and that a fact may be well pleaded notwithstanding the existence of a valid law establishing conclusively the direct reverse of

the matter alleged. We do not think that these propositions are sustainable either upon reason or authority. The allegation of a sound conclusion of law is always regarded as superfluous in pleading, and the allegation of an unsound conclusion is entirely disregarded. This is undeniably true with respect to laws establishing general rules of right or obligation, and there is no reason why it should not be held equally true in respect to a law which merely determines the status of a particular thing. Why should a general demurrer to a complaint be overruled and the parties required to proceed to the trial of an issue of fact when the court, looking to a law of which it is bound to take notice, can clearly see that one of the essential allegations of the complaint can never by any legal possibility be proved? What useful or desirable end could be attained by shutting its eyes to the certain event of the litigation and putting the parties to the trouble, delay, and expense of framing and preparing to try issues which can have no influence upon the final result?''

In *Chavez* v. *Times Mirror Co.*, 185 Cal. 20 [195 Pac. 666], we find the following: ''There is apparently no dissent from the proposition that in the consideration of a pleading the courts must read the same as if it contained a statement of all matters of which they are required to take judicial notice, even when the pleading contains an express allegation to the contrary. (See *People* v. *Oakland Water Front Co.*, 118 Cal. 234–244–246 [50 Pac. 305]; *French* v. *Senate*, 146 Cal. 604, 607 [2 Ann. Cas. 756, 69 L. R. A. 556, 80 Pac. 1031]; 12 Ency. Pl. & Pr. 1; 1 Abbott's Trial Brief, 2d ed., p. 107.)''

■ A like question was before the court and considered in the case of *Sheehan* v. *Vedder*, 108 Cal. App. 419 [292 Pac. 175]. The court there was presented with the records of the general land office, just as we are here, and the question was disposed of in the following language: ''Section 1875 of the Code of Civil Procedure provides in part as follows: 'Courts take judicial notice of the following facts: . . . Public and private official acts of the legislative, executive, and judicial departments of this State and of the United States. . . . In all of these cases the court may resort for its aid to appropriate books or documents of reference. This section has been·construed to permit a court to take judicial notice of a letter from the commissioner of the General Land Office of the United States. (*Southern Pac. Co.* v. *Lipman,* 148

Cal. 480, [83 Pac. 445]; *Southern Pac. Land Co.* v. *Meserve,* 186 Cal. 157 [198 Pac. 1055]); of the withdrawal of indemnity lands by the Secretary of the Interior (*Southern Pac. R. R. Co.* v. *Wood,* 124 Cal. 475 [57 Pac. 388]); of regulations of the Department of the Interior requiring the issuance of a receiver's receipt and entry of homestead location (*Whittaker* v. *Pendola,* 78 Cal. 296 [20 Pac. 680]), and of government surveys. (*Rogers* v. *Cady,* 104 Cal. 288 [43 Am. St. Rep. 100, 38 Pac. 81].) In the case of *French* v. *Senate of California,* 146 Cal. 604 [2 Ann. Cas. 756, 69 L. R. A. 556, 80 Pac. 1031], it was held that this judicial notice comes to the aid of the sufficiency of a pleading where necessary. (*Ohm* v. *San Francisco,* 92 Cal. 437 [28 Pac. 580]; *Mullan* v. *State,* 114 Cal. 578 [34 L. R. A. 262, 46 Pac. 670]; *Fey* v. *Rossi Improvement Co.,* 23 Cal. App. 766 [139 Pac. 908].) With these authorities before us, we are of the opinion that we should take judicial notice of the records and documents of the Land Office relating to the issues on this appeal. Allegations in a pleading of a fact contrary to facts of which judicial notice is taken are not considered as true. (21 R. C. L. 506–509; 21 Cal. Jur. 96, 97; *Fey* v. *Rossi Improvement Co., supra; French* v. *Senate of California, supra.*)''

Subdivision 3 of section 1875 of the Code of Civil Procedure, relative to the facts and acts of which courts must take judicial notice, reads as follows: ''Public and private acts of the legislative, executive and judicial departments of this State and of the United States, and the laws of the several States of the United States and the interpretation thereof by the highest courts of appellate jurisdiction of such states;''

That the department of the interior and the general land office of the United States is a part of the general branch of the government requires citation of no authorities.

█ In the particular cases before us, the legality of the acts of the general land office of the United States and the orders issuing therefrom cannot be determined. Such questions are beyond the jurisdiction of this court, and our inquiry into, and inspection of the records can extend only so far as we are required to take judicial notice of such acts, orders and proceedings. In other words, the certified copies of acts, orders and proceedings of the general land office submitted for our inspection are only memorials to aid the memory of the court of those matters of which the court is

required to take judicial notice, and of which it is presumed to know, and therefore does not fall within the purview of the rule relating to affidavits not introduced in evidence, such as were considered in the case of *Hurley* v. *Lake County, supra*, and *Mackay* v. *Clark Rig Bldg., supra*.

In the case of *Sheehan* v. *Vedder, supra,* one involving land supposed to be valuable for oil and gas, there was presented for consideration by the court the different orders issued by the commissioner of the general land office, and also, all the acts in relation to the lands involved, taken by the commissioner of said general land office, including a prospector's permit to enter upon the lands and prospect the same for oil and gas. The court goes on to say that at the time of the consideration of the case, they had before it the original oil and gas prospecting permit, and the different papers, just as we have here. The case below was an action to quiet title. An answer was filed which called for the interposition of the judicial knowledge of the court, and judgment was entered on the pleadings, and judgment affirmed.

In *Jones* v. *United States,* 137 U. S. 202 [11 Sup. Ct. 80, 34 L. Ed. 691], the Supreme Court of the United States, considering the extent of matters of which the court might take judicial knowledge, of its own motion held that it had a right to look to the letters of the department of state and to a circular published by the treasurer of the department, to refresh its judicial knowledge; and in the case of *Leonard* v. *Lennox,* 181 Fed. 760, the court held that it would take judicial knowledge of information contained in letters from the commissioner of the general land office, addressed to the Secretary of the Interior, and the secretary's reply thereto.

From what we have stated, it is absolutely unescapable that the trial court was bound, and this court is also bound to take judicial knowledge of every act of the commissioner of the general land office having to do with the lands involved in the respective actions, and even though the amended complaints are absolutely silent as to any of such facts, and the question is presented only upon demurrer, the respective amended complaints must each one be read as though they incorporated everything of which the courts are bound to take judicial knowledge. One of the acts of which the courts are bound to take judicial knowledge is the order of withdrawal issued by the President of the United

States on September 27, 1909, and subsequent withdrawal orders confirmed by what is known as the "Picket Act" of June 25, 1910, by the terms of which certain lands and premises were withdrawn from location. The exterior boundaries of such lands included all the premises described and involved in the respective actions presented for our consideration on the appeals herein. Thereafter, permits were issued to the various defendants and their assignors to enter upon the premises involved herein and prospect the same for oil and gas. It does not seem necessary for us to schedule all the orders, letters and documents issuing from the general land office having to do with the premises involved, the rights of the defendants as lessees thereunder, and the large sums of money expended by them in the development of the premises, further than to state that such records show that the United States of America not only claims an interest therein, but has an interest as owner of the fee title to all of said premises.

The appellants rely strongly upon the case of *Varcoe* v. *Lee,* 180 Cal. 338 [181 Pac. 223], wherein the court expresses the thought that in taking judicial knowledge, great care and caution must be exercised. A careful reading of that case, however, discloses that there is not a single word in the opinion of the court limiting in anywise the duty of the court to take judicial knowledge of the acts of officers and executive departments, as required by subdivision 3 of section 1875 of the Code of Civil Procedure. In other words, the only conclusion that can be drawn from the case of *Varcoe* v. *Lee, supra,* is that the court should be reasonably certain as to everything of which it takes judicial notice, not that judicial notice should not be taken when the circumstances obviously require such action.

The position of the respondents as to how the amended complaints in the respective actions should be read, and that everything of which the courts should take judicial knowledge must be read as a part thereof, must be, and is held to be sound.

The second proposition tendered for our consideration may be stated in the following words: Is the United States a necessary party to the actions, and not having consented to be sued, can the actions be maintained?

In the case of *Louisiana* v. *Garfield*, 211 U. S. 70 [29 Sup. Ct. 31, 53 L. Ed. 92], the court had before it an action in which the state of Louisiana sought to establish title to certain lands. In that action the Secretary of the Interior department was a nominal defendant. A demurrer was interposed upon the ground that the United States was an indispensable party, and had not consented to be sued. The Supreme Court held that the bill in equity presented questions in law wherein the United States was entitled to be heard.

In *Skeen* v. *Lynch*, 48 Fed. (2d) 1044, in an action wherein a patent conveyed stock-raising lands, reserved coal and other minerals, and the patentee sought to quiet title to oil and gas as against the government's prospecting permittees, it was held that the United States was an indispensable party. The language of the court goes on to explain that the interest of the United States is shown to exist, and any judgment that might be entered would constitute a cloud upon the title of the United States, and therefore, the United States was a necessary party, and not having consented to be sued, the action could not be maintained. To the same effect is the case of *Wood* v. *Phillips*, 50 Fed. (2d) 714. The case of *Louisiana* v. *Garfield*, *supra*, is followed, and it was held that the bill to quiet title could not be maintained, as it involved lands belonging to the United States.

In *Peale* v. *Davis (Secretary of War)*, 19 Fed. (2d) 695 [57 App. D. C. 221], the court held that as the action involved property belonging to the United States, it could not be maintained. We quote from the syllabus: "Action to compel Power Commission to vacate license covering land to which government has colorable title only; held, suit against the United States, and not proper remedy to remove cloud on title."

The case of *Skeen* v. *Lynch*, *supra*, relies upon the case of *Louisiana* v. *Garfield*, *supra*, in which it was held that the bill disclosed a claim of ownership in the United States, and therefore could not be maintained without the United States as a party to the action. The opinion in the case of *Skeen* v. *Lynch*, *supra*, is so complete that instead of quoting therefrom, we simply cite the case as showing conclusively that in these actions, by reason of the judicial knowledge taken by the court, the United States is a necessary party, and as the United States cannot be sued, the actions must fail. The

case of *Peale* v. *Davis, supra,* an action involving leased premises, held that the United States was a necessary party.

In *Sullivan* v. *Mammoth Oil Co.,* 22 Fed. (2d) 663, it was held that since the United States holds title to public lands, the courts will not interfere with the action of the department of the interior, and that the United States is a necessary party where the title to public lands is involved. In that case the court relied upon the case of the *United States* v. *Schurz,* 102 U. S. 378 [26 L. Ed. 167].

In *Wilson* v. *Elk Coal Co.,* 300 Fed. 473, the court pointed out that the land department of the United States is a special tribunal with judicial functions, having exclusive jurisdiction of issues affecting title to the public lands until patent is issued. (Citing a number of cases.) It was also pointed out in that case that if the party instituting the action had complied with all the requirements of the law, proceedings might be maintained against the Secretary of the Interior to issue a patent.

These cases and the cases cited in the opinions, seem to us to establish beyond controversy that under the circumstances surrounding these cases, and the facts of which the court, as we have said, must take judicial knowledge, show that the United States is a necessary party, and therefore that the action must fail, in view of the fact that the United States cannot be sued.

The appellants further rely upon section 910 of the Revised Statutes of the United States, wherein it is provided that possessory actions between persons for the recovery of any mine, or for damages, etc., shall not be affected by the fact that the paramount title to the lands in which such mines may lie, is in the United States, but that each case shall be adjudged by the law of possession. In support of this position the appellants call our attention to the decision of this court in the case of *Graham* v. *Superior Court,* 131 Cal. App. 579 [21 Pac. (2d) 621]. There is nothing in the opinion in that case indicating that title to the premises involved was in controversy. Only the fact of possession was involved, and the court held that one in possession was entitled to the protection of the law against unlawful invasion. It may be further added that the circumstances surrounding the Graham case, *supra,* did not involve taking into consideration the claim of the United States, or the title of the United

States, and therefore the United States was in no sense of the word a necessary party. In other words, the right of possession only, was involved, and it was held that the court had jurisdiction to protect such possession.

The substance of the foregoing cases leads us to the conclusion that the plaintiffs have selected the wrong forum in which to seek a determination of their alleged rights to the premises involved. As pointed out in some of the cited cases, their remedy lies within the jurisdiction of the general land office of the United States. The general Withdrawal Act containing an exception as to valid claims existing at the date of the withdrawal orders, and likewise, the exception in the Leasing Act of February 25, 1920, do not have any bearing upon the cases before us. The valid claims of the plaintiffs, if any, must be ascertained by the land department of the United States. (See cases heretofore cited.)

The cases of *Gauthier* v. *Morrison,* 232 U. S. 452 [34 Sup. Ct. 384, 58 L. Ed. 680], and *Sproat* v. *Durland,* 2 Okl. 24, 25 [35 Pac. 682, 886], while upholding possessory actions, likewise approve the doctrine that courts will not interfere with the functions of the land department. We may here add, also, that the case of *Graham* v. *Superior Court, supra,* did not go any further than simply affirm the principle that the right of possession would be upheld and trespassing prevented.

From a review of the cases which we have cited the conclusion is evident that any decree that might be entered in the actions now being considered would be of no avail, and the title of the United States and the right of the United States to determine the parties to whom title should pass would be in nowise affected. The United States, in relation to the oil lands and the lands included within the withdrawal order heretofore referred to, occupies the position of a proprietor, being entitled to rents, issues, royalties, etc.

We conclude that the second objection urged by the respondents that the action is one in which the United States is a necessary party, is well taken, and that as the United States cannot be sued without its consent, the actions must fail.

It is finally urged that the appellants are guilty of laches, and that their actions are therefore barred. The proceedings of the general land office and of the department of the interior, of which the courts must take judicial knowledge, show the date of the withdrawal order as of September 27,

1909; that on March 21, 1924, the Secretary of the Interior issued to the defendant Beal, an oil and gas prospecting permit covering the lands involved in this action, together with other lands; that on March 21, 1924, the Secretary of the Interior approved assignments made by the defendant Beal, to others, of portions of the rights granted to him under the lease. On April 10, 1926, the commissioner of the general land office granted to Carl H. Beal, permittee, and Charles R. Blyth, assignee in part, an extension of time until December 31, 1926, in which to comply with the orders theretofore issued. On January 4, 1927, a further extension was granted. Reciting the discovery of valuable deposits of oil and gas, the Secretary of the Interior in 1930, granted to the respondents, Kettleman Oil Corporation and others, various oil and gas leases. On July 3, 1930, the Secretary of the Interior approved an agreement between the Kettleman North Dome Association and its members. The agreement gives the Kettleman North Dome Association the right to operate and develop property within the withdrawn lands.

There is nothing showing that the plaintiffs in the respective actions have ever been awarded any lease or permit to go upon the premises involved and explore the same for oil and gas.

Of the foregoing actions on the part of the Secretary of the Interior and the commissioner of the general land office of the United States the court, under the provisions of subdivision 3 of section 1875 of the Code of Civil Procedure, is required to take judicial notice. While it is recited in some of the papers in connection with the foregoing acts of the United States officers, that large sums of money have been expended in the development of the properties by the permittees, what the permittees have done in the expenditure of money and the development of the property we think does not come within the purview of the judicial knowledge of the court, and therefore, are not considered in the determination of the question as to whether the appellants have or have not been guilty of laches. The record does show, however, that for a number of years preceding the commencement of the respective actions, that the general land office was exercising dominion over the premises involved and executing leases and granting permits to the defendants and their assignors, to go upon the premises and explore the same in the development of oil and gas.

As we have stated, the amended complaints in the pending actions should be read as though they incorporated all the acts of the department of the interior of the United States, and of the commissioner of the general land office thereof. In other words, the appellants were all put upon notice of the claims of the respective respondents, and of the actions of the executive officers of the United States in granting them rights and privileges.

That the question of laches may be raised upon demurrer is supported by the cases of *Seculovich* v. *Morton,* 101 Cal. 673 [36 Pac. 387, 40 Am. St. Rep. 106]; *Taylor* v. *Blair,* 14 Mo. 437; *Kleinclaus* v. *Dutard,* 147 Cal. 245 [81 Pac. 516]; *Superior California Fruit Land Co.* v. *Grossman,* 32 Cal. App. 357 [162 Pac. 1046], hearing denied by the Supreme Court. In the Grossman case, which was an action for specific performance to compel the conveyance of real estate, a number of cases are collected involving the application of the doctrine of laches. The principle, also approved, was that the circumstances surrounding each case, and the probability of a change in the value of the property, should be considered. The court there cited the following cases giving the time when actions were held barred, to wit:

In *Fowler* v. *Sutherland,* 68 Cal. 414 [9 Pac. 674], two years and three months only had elapsed before specific performance was sought;

In *O'Donnell* v. *Jackson,* 69 Cal. 622 [11 Pac. 251], a little over three years had elapsed;

In *Requa* v. *Snow,* 76 Cal. 590 [18 Pac. 862], there had been a lapse of three years;

In *Green* v. *Covillaud,* 10 Cal. 317 [70 Am. Dec. 725], there had been a delay of between twenty-one and twenty-two months.

It was held in all these cases that the actions for specific performance was barred.

In the Grossman case, *supra,* the delay in beginning the action was slightly in excess of three years. It was held that the delay for that period of time was fatal. It was also further held that the statute of limitations did not control equity in applying the principle of laches.

In view of the fact of the change in the value of lands by reason of the discovery of oil or gas therein, the language of Justice Brewer, quoted in the case of *Troll* v. *City of St.*

*Louis,* 257 Mo. 526 [168 S. W. 167, 175], and approved in the Grossman case, is applicable here, to wit: "No doctrine is so wholesome, when wisely administered, as that of laches. It prevents the resurrection of stale titles, and forbids the spying out from the records of ancient and abandoned rights. It requires of every owner that he take care of his property, and of every claimant that he make known his claims. It gives to the actual and longer possessor security, and induces and justifies him in all efforts to improve and make valuable the property he holds," etc. Or, in other words, one is not permitted to stand by while another develops property in which he claims an interest, and then if the property proves valuable, assert a claim thereto, and if it does not prove valuable, be willing that the losses incurred in the exploration be borne by the opposite party. This thought was expressed in one case by the following language: "If the property proves good, I want it; if it is valueless, you keep it."

We have not attempted to review in the foregoing opinion the excessive number of cases cited by the respective counsel, but only to select those which we have deemed decisive of the questions involved. The proceedings of which the court necessarily took judicial knowledge, and of which the plaintiffs are likewise held to have knowledge, show that many years elapsed between the acquisition of rights in and to the involved premises by the respondents and their assignors, and the institution of the respective actions, and necessarily invoked the principle of laches.

It follows from what we have said that the orders of the superior court in sustaining the demurrers to the respective amended complaints without leave to amend should be, and the same are hereby affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of these causes was denied by the District Court of Appeal on February 13, 1937, and an application by appellants to have the causes heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 15, 1937.